EGAN, C. J.
After pleading guilty, defendant was convicted of six counts of unlawful delivery of methamphetamine, ORS 475.890 (Counts 1, 3, 5, 7, 9, and 12); six counts of unlawful possession of methamphetamine, ORS 475.894 (Counts 2, 4, 6, 8, 10, and 13); one count of unlawful manufacture of methamphetamine, ORS 475.886 (Count 11); and one count of frequenting a place where controlled substances are used, ORS 167.222 (Count 14).[1] The trial court imposed concurrent sentences totaling 81 months in prison, which included the statutorily required mandatory minimum sentences applicable to many of defendant's convictions, and 36 months of post-prison supervision. Based on a theory of "sentence entrapment," defendant contends on appeal that the mandatory minimum sentences that the court imposed on Counts 3 through 13 are unconstitutionally disproportionate as applied to her under Article I, section 16, of the Oregon Constitution because they would not have applied had she not been "pushed into" committing those offenses by a government confidential informant. The state responds that defendant's claims are unreviewable under former ORS 138.222 (2015)[2] and the appeal must be dismissed. And, in any event, the state contends, there is no basis for us to conclude that the sentences violate Article I, section 16. We conclude that we have authority to review defendant's claims of error-at least with respect to the sentences imposed on Counts 11 and 12-however, we agree with the state that defendant's claims fail on the merits.[3] Accordingly, we affirm.
The following undisputed facts were adduced at defendant's sentencing hearing. In 2008, defendant, a bartender and bar owner in Coos Bay, began regularly using small amounts of methamphetamine; she testified that she would put the drug into her coffee to help her cope with personal and financial stress. Toward the end of that year, defendant began selling methamphetamine to three of her friends, who used the drug in a similar fashion. Defendant would buy "eightballs" or "teeners"[4] from a supplier she met *329 at the bar and break them down into smaller quantities to sell to her friends. Between the end of 2008 and July 2013, defendant made approximately $100 to $150 a week selling methamphetamine.
In 2013, the South Coast Interagency Narcotics Team (SCINT) arranged for a confidential government informant to purchase methamphetamine from defendant in a series of six body-wire-recorded controlled buys. Those buys formed the bases for defendant's convictions in this case.
In the first transaction, on March 14, 2013, the informant purchased one-quarter ounce (approximately 6.99 grams) of methamphetamine from defendant for $350. In the second buy, on April 8, the informant purchased 13.85 grams of methamphetamine from defendant for $700. Because her usual supplier did not deal in those quantities, defendant bought the drugs from a different supplier. Defendant also provided "baggies" for the informant to resell the methamphetamine, and they discussed the possibility of a price break for larger quantities. During the third transaction, on April 19, the informant purchased 18.89 grams of methamphetamine from defendant, and defendant provided him with new packaging material. She also told him that she would be making future trips in order to get methamphetamine for him. On May 16, the fourth buy, the informant purchased 27.4 grams (approximately one ounce) of methamphetamine, which defendant purchased from yet another supplier, this time in Portland. She bought the methamphetamine for $800 and sold it to the informant for $1,200. Defendant told him that she "could probably get whatever he wanted at the price he was willing to pay."[5] In the fifth transaction, on June 18, the informant arranged for a purchase of four ounces from defendant; defendant bought approximately that amount (111.49 grams) from her Portland supplier for $2,600 and sold it to the informant for $4,000. Finally, on or about July 1, the informant requested one pound, two ounces (approximately 510 grams), from defendant. Defendant drove to Portland to buy the drugs; when she returned home, she put the methamphetamine in a trash bag, took it outside, and left it. She was expecting the informant to come pick it up, but, instead, several police officers arrived with a search warrant and found the methamphetamine, which was confirmed to be over 500 grams. They also searched her home and seized computers, cell phones, and financial documents.
Based on those six transactions, defendant was arrested and charged with the offenses listed above. She waived a jury, pleaded guilty to all charges, and was convicted. At sentencing, defendant urged the court to impose a downward departure based on "sentencing entrapment," citing federal case law applying the federal sentencing scheme. See, e.g. , United States v. Castaneda , 94 F.3d 592, 595 (9th Cir. 1996) (recognizing court's authority to "subtract the amount of drugs tainted by sentencing entrapment from the total quantity of drugs attributable to the defendant for purpose of establishing a mandatory minimum sentence"). She argued that defendant "would not have been engaged in what she was engaged with unless SCINT upped it, and upped it, and upped it two more times after that."
The trial court stated that, given a choice, it would impose a downward durational departure, but that it lacked authority to do that. The court observed that "the only reason [defendant is] a big-time drug dealer is because [she] was pushed to be a big-time drug dealer" and, "in the big picture of drug dealers, the outcome of this case is disproportionate to what I think would be a fair sentence." But, the court explained, Oregon's statutory scheme establishing the sentences for the pertinent offenses expressly precluded the court from departing downward from the statutory minimums:
"I reject that the theory presented-sentencing entrapment-authorized me to ignore the statutory scheme which Oregon has created, which again I reference prohibits *330 this Court from downward durational or dispositional departing."
Consequently, the court proceeded to sentence defendant according to the statutorily required minimum sentences, as applicable.[6] On each of defendant's most serious offenses, that is, Counts 11 and 12, the court imposed an 81-month prison term, based on application of ORS 475.925 and ORS 475.930, set out below. See 291 Or. App. at 608-09, 422 P.3d at 332. The court ordered all of defendant's sentences to be served concurrently.
Defense counsel then raised the issue of disproportionality, citing State v. Rodriguez/Buck , 347 Or. 46, 217 P.3d 659 (2009), for the proposition that the court had authority to depart from the statutory minimums where imposing them would render the sentence unconstitutionally disproportionate. See Or. Const., Art. I, § 16.[7] The court rejected that argument, clarifying that it had earlier found the statutorily mandated sentences to be "disproportionate to what's fair, under the circumstances" not unconstitutionally disproportionate for purposes of Article I, section 16.
On appeal, defendant reprises her constitutional argument, contending that, because the trial court made a "finding of sentence entrapment-that, although defendant was predisposed to commit minor methamphetamine offenses, she was not predisposed to commit the major offenses that the state 'pushed' her into"-and her undisputed testimony at the sentencing hearing demonstrates that she engaged in the higher-quantity transactions with the informant "not because she necessarily desired to become a major drug dealer, per se , but out of financial need"-the court erred in concluding that the mandatory minimum sentences on Counts 3 to 13 are not disproportionate as applied to her under Article I, section 16.
In response, the state first contends that we must dismiss the appeal under former ORS 138.222, which confers jurisdiction and regulates the scope of our review in this case. State v. Brewer , 260 Or. App. 607, 612-16, 320 P.3d 620 (2014), rev. den. , 355 Or. 380, 328 P.3d 696 (2014) (holding, consistently with State v. Cloutier , 351 Or. 68, 90-91, 261 P.3d 1234 (2011), that former ORS 138.222 governs appeal and review of sentences imposed for post-1989 felonies). Former ORS 138.222(2)(a) precludes appellate review of "[a]ny sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission." In the state's view, the trial court here did impose presumptive sentences; therefore, defendant's claims are barred by former ORS 138.222(2)(a).[8]
*331 Defendant responds that former ORS 138.222(2)(a) does not preclude review because her claims of error relate to sentences that are prescribed by statute, not the rules of the Oregon Criminal Justice Commission, and the Supreme Court's recent decision in State v. Althouse , 359 Or. 668, 375 P.3d 475 (2016), resolves that issue conclusively in her favor.[9] We agree with defendant.
In Althouse , the court considered whether former ORS 138.222(2)(a) precluded the defendant from obtaining direct appellate review of a sentence imposed pursuant to ORS 137.719(1), which provides that "[t]he presumptive sentence" for a defendant's third felony sex conviction is life imprisonment without the possibility of parole. 359 Or. at 670, 375 P.3d 475. As it does here, the state asserted that appellate review was barred because the sentence was a presumptive sentence under the rules of the Commission for purposes of former ORS 138.222(2)(a). In support of that position, the state argued that ORS 137.719(1) expressly designated life without parole as "the presumptive sentence," and a subsequently adopted Commission rule, OAR 213-003-0001(16), defined the term "presumptive sentence" to include "a sentence designated as a presumptive sentence by statute." Id. at 671, 375 P.3d 475.
The Supreme Court disagreed. Parsing the text of the statute, the court noted that the life without parole sentence under ORS 137.719(1) did not fit within the prerequisites of former ORS 138.222(2)(a) in two respects: first, it was not a sentence "within" a presumptive sentence, because it was "not a sentence that falls within a range of possible sentences marked by minimum and maximum levels of severity," id. at 673, 375 P.3d 475 ; and, second, it was not a sentence "prescribed by the rules of the Criminal Justice Commission," because it was the statute that prescribed the presumptive sentence and it "did so independently of anything that the Commission did or did not do," id. Thus, "[i]f the legislature repealed [the statute], no presumptive life sentence for a defendant's third felony sex offense would be prescribed by rule or otherwise." Id.
The court also explored the context and legislative history of former ORS 138.222(2)(a), noting that it was enacted in the same bill in which the legislature initially approved the sentencing guidelines. Id . 674-75, 375 P.3d 475 (citing Or. Laws 1989, ch. 790). As the court explained, the 1985 legislature had established what is known now as the Oregon Criminal Justice Commission[10] and directed it to make recommendations to address concerns about the lack of uniformity in sentencing under the indeterminate sentencing scheme then in effect. Id. at 675-76, 375 P.3d 475. In response to that directive, the Commission created the sentencing guidelines grid. The vertical axis of the grid classified crimes by seriousness level (the "Crime Seriousness Scale"), the horizontal axis classified criminal histories of defendants (the "Criminal History Scale"), and the intersection of those two axes determined the appropriate grid block for an offense of conviction and stated the presumptive sentence for that offense. Id . at 675, 375 P.3d 475 ; see also OAR 213-004-0001 (describing operation of sentencing guidelines grid); OAR chapter 213, division 17 (setting out crime seriousness scale); OAR chapter 213, division 19 (identifying crime seriousness scale subclassifications for drug-related offenses); Or. Laws 1989, ch. 790, § 95 (providing that sentences within the grid blocks "constitute presumptive sentences").
In 1989, the legislature approved the guidelines and directed the courts to impose the presumptive sentence provided by the applicable guidelines grid block, unless the court found substantial and compelling reasons justifying a departure. Althouse , 359 Or. at 675, 375 P.3d 475. And, at the same time, the legislature enacted what is now former ORS 138.222 (2)(a), precluding appellate review *332 of " '[a]ny sentence that is within the presumptive sentence prescribed by the rules of the [Oregon Criminal Justice Commission].' " Id. at 675-76, 375 P.3d 475 (quoting Or. Laws 1989, ch. 790, § 21(2)(a) (brackets in Althouse ) ). Given that context, the court concluded, the provision could have "only one referent: The phrase refers to a sentence that comes within the range of presumptive sentences prescribed by a sentencing guidelines grid block." Id. at 676, 375 P.3d 475.
In response to the state's arguments to the contrary, the court also explained that nothing about the enactment of ORS 137.719(1) suggested a legislative intention to expand the scope of former ORS 138.222(2)(a) to bar presumptive sentences that are not contained within a sentencing guidelines grid block from appellate review. Id. at 677, 375 P.3d 475. Moreover, the court held, the Commission itself had no authority to alter the meaning of ORS 138.222(2)(a) by amending the definition of "presumptive sentence" in OAR 213-003-0001(16) to include a sentence designated as such by statute. Id. at 677-78, 375 P.3d 475.
Accordingly, the court confirmed what it had earlier held in State ex rel. Huddleston v. Sawyer , 324 Or. 597, 932 P.2d 1145, cert. den. , 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997) -that former ORS 138.222(2)(a)" 'refers only to the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history,' " and it "does not preclude review of a presumptive sentence that is not contained within a grid block." Althouse , 359 Or. at 676, 375 P.3d 475 (quoting Huddleston , 324 Or. at 605, 932 P.2d 1145 (emphasis in Althouse ; some internal quotation marks omitted) ). Thus, the presumptive life sentence imposed pursuant to ORS 137.719(1) was not barred from review by former ORS 138.222(2)(a). Id . at 678, 375 P.3d 475.
With that analysis in mind, we examine the sentences at issue in this case. As noted earlier, because it is dispositive, see 291 Or. App. at 601, n. 3, 422 P.3d at 328, n. 3, we focus our attention on the sentences imposed for defendant's most serious offenses, Counts 11 (unlawful manufacture of methamphetamine, ORS 475.886 ) and 12 (unlawful delivery of methamphetamine, ORS 475.890 ). Among other things, those counts alleged, in each instance, that the offense "involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers," triggering application of ORS 475.925 and ORS 475.930.
ORS 475.925 provides, as relevant:
"When a person is convicted of the unlawful delivery or manufacture of a controlled substance, the court shall sentence the person to a term of incarceration ranging from:
"(1) 58 months to 130 months, depending on the person's criminal history,[11 ] if the delivery or manufacture involves:
"* * * * *
"(b) 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers[.]"
ORS 475.930, in turn, provides, as relevant:
"(1) When a court sentences a person under ORS *** 475.925 :
"(a) The court shall use the criminal history scale of the sentencing guidelines grid of the Oregon Criminal Justice Commission to determine the sentence to impose. The sentence described in:
"(A) ORS 475.925(1) shall be determined utilizing crime category 10 of the sentencing guidelines grid.
"* * * * *
"(b)(A) Notwithstanding ORS 161.605, the court shall impose the sentence described in ORS *** 475.925 and may not impose a sentence of optional probation or grant a downward dispositional departure or a downward durational departure under the rules of the commission.
*333 "(B) The court may impose a sentence other than the sentence described in ORS *** 475.925 if the court imposes a longer term of incarceration that is otherwise required or authorized by law."
Thus, as the trial court recognized, it was required to sentence defendant on Counts 11 and 12 to 58 to 130 months (absent a longer sentence under some other provision of law) depending on her criminal history, using crime category 10 of the sentencing guidelines grid. ORS 475.925(1)(b) ; ORS 475.930(1)(a)(A). Because of her criminal history, defendant was classified as "E" on the criminal history scale;[12] accordingly, she was sentenced to 81 months on each of those convictions (coinciding with grid block 10-E on the guidelines). And, the statutory scheme expressly precluded the court from departing downward from those sentences. ORS 475.930(1)(b)(A).
The state contends that, under that scheme, former ORS 138.222(2)(a) bars appellate review. In the state's view, Althouse supports the state's position, rather than defendant's, because the sentences imposed on Counts 11 and 12 were within a grid block-i.e. , grid block 10-E. The state reasons that, unlike the statute at issue in Althouse , here, ORS 475.930(1)"does not prescribe a presumptive sentence; rather, it merely prescribes a crime-seriousness ranking that then is used to assign the proper gridblock for purposes of determining the proper presumptive sentence within the guidelines." (Emphasis in original; footnote omitted.) Thus, according to the state, the sentences imposed here were within the presumptive sentence prescribed by the rules of the Criminal Justice Commission, because, given defendant's criminal history, the 81-month sentence was the presumptive sentence contained in the grid block for that crime seriousness level.[13]
We appreciate the state's point that the statutory scheme here is distinct from the one at issue in Althouse ; however, we are not persuaded that that distinction makes a difference, given the court's reasoning in Althouse . It is clear from the court's interpretation of former ORS 138.222(2)(a) in that case-in particular, its reliance on the interrelationship between that enactment and the adoption of the sentencing guidelines-that the presumptive sentence "prescribed by" the rules of the Commission can refer only to the presumptive sentence contained in the appropriate guidelines grid block as dictated by application of the crime seriousness and criminal history scales established by the Commission in the guidelines . Here, the legislature itself mandated the crime seriousness scale to be used in determining the presumptive sentences, notwithstanding what the Commission had, by rule, promulgated in the guidelines; moreover, the statutory scheme expressly precluded the court from imposing a downward departure that would otherwise be available under the guidelines rules. Accordingly, sentences imposed under ORS 475.925 and ORS 475.930 -although determined by reference to the grid block-are not within the presumptive sentence prescribed by the rules of the Commission, as the legislature, in enacting former ORS 138.222(2)(a), intended. As in Althouse , the sentences here are not "provided in a grid block for an offender classified in that grid block," 359 Or. at 676, 375 P.3d 475 (internal *334 quotation marks omitted); rather, they are prescribed by the legislature, using the grid block as a reference. Said another way, because the legislature itself, rather than the Commission's rules, established the crime seriousness scale required to be used in calculating the presumptive sentence under the grid block, the presumptive sentence for that offense has not been "prescribed" by the rules of the Commission.[14]
Having rejected the state's assertion that defendant's claims of error are not reviewable, we turn to the merits. "We review a trial court's decision under Article I, section 16, for legal error, State v. Padilla , 277 Or. App. 440, 442, 371 P.3d 1242 (2016), and we are bound by the trial court's findings of historical fact if supported by evidence in the record. State v. Hall , 339 Or. 7, 10, 115 P.3d 908 (2005)." State v. Conrad , 280 Or. App. 325, 333-34, 381 P.3d 880 (2016), rev. den. , 360 Or. 851, 389 P.3d 1141 (2017).
As noted, defendant contends that the statutorily required sentences that were imposed on Counts 3 to 13 are unconstitutionally disproportionate as applied to her under Article I, section 16. Her thesis-with respect to all of the counts-is that, under the framework for evaluating proportionality established in Rodriguez/Buck and subsequent cases,
"[w]hen a defendant is predisposed to commit a minor offense but has been entrapped to committing a much greater offense with a more severe sentence, a mandatory minimum sentence for the greater offense may be disproportionate under the circumstance of the particular case."
(Boldface omitted.) She contends that the court's comments at sentencing "amount to a finding that defendant was predisposed to commit the lesser offense, but not the greater offenses, and that she committed those greater offenses as a result of government conduct"; therefore, according to defendant, the statutorily required mandatory minimum sentences that flowed from those offenses are unconstitutionally disproportionate as applied to her. She also appears to contend that her undisputed testimony that she was motivated by financial need-rather than the "desire[ ] to become a major drug dealer"-suggests that the penalty was unconstitutionally disproportionate to the offense. Defendant acknowledges that no published Oregon appellate decision has recognized sentencing entrapment as a basis for a proportionality challenge under Article I, section 16 ; however, she asserts that Rodriguez/Buck and its progeny support that proposition. We are not persuaded.
A criminal penalty violates the proportionality guarantee of Article I, section 16, when its imposition would "shock the moral sense" of reasonable people. State v. Wheeler , 343 Or. 652, 670, 175 P.3d 438 (2007). Given that the legislature has primary responsibility for determining offenses and their appropriate penalties, it is "only in rare circumstances" that a penalty will be found to be "disproportionately severe" under that standard. Id . at 671, 175 P.3d 438. In Rodriguez/Buck , the Supreme Court provided a framework for evaluating the issue:
"In declaring unconstitutional a punishment that is so disproportionate, when compared to the offense, so as to 'shock the moral sense' of reasonable people, this court has identified at least three factors that bear upon that ultimate conclusion: (1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."
347 Or. at 58, 217 P.3d 659 (footnote omitted).
Defendant's reliance on Rodriguez/Buck for the proposition that "sentencing entrapment" rendered her 81-month mandatory minimum sentence unconstitutionally disproportionate is flawed in several respects. First, although defendant is correct that Rodriguez/Buck allows for consideration of "the specific circumstances and facts of the *335 defendant's conduct" that led to the defendant's conviction when comparing the severity of the penalty and the gravity of the offense under the first factor, id . at 62, 217 P.3d 659, those considerations are generally most useful where the statute defining the offense encompasses a wide range of acts. That is because, in those circumstances, the place along the spectrum of conduct prohibited by the statute where a defendant's behavior falls can indicate the relative severity of the offense. As the court explained,
"[a]n as-applied proportionality analysis that considers the facts of an individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct. In such a case, a harsh penalty might not, on its face, be disproportionate, because of the fact that the statute dealt, inter alia , with some extreme form of that conduct. However, when a defendant is convicted for engaging in only more minor conduct encompassed within the statute, the defendant may plausibly argue that the mandatory sentence, as applied to the particular facts of his or her case, is unconstitutionally disproportionate ."
Id . at 61, 217 P.3d 659 (emphasis added).
Such was the case in Rodriguez/Buck , where the two defendants were convicted of first-degree sexual abuse under ORS 163.427, an offense that covers a broad range of conduct, all of which is subject to a 75-month mandatory prison term under Ballot Measure 11. Id. at 69, 217 P.3d 659. Considering the particular circumstances of the defendants' crimes-defendant Rodriguez caused the back of a boy's head to be in contact with the defendant's clothed breast for about a minute; defendant Buck let the back of his hand remain when the girl leaned her clothed buttocks against his hand several times and later twice wiped dirt off the back of her shorts-the court found that the defendants' conduct in each instance fell on the less severe end of the range of conduct encompassed within the crime of first-degree sexual abuse, suggesting that the 75-month Measure 11 sentence was unconstitutionally disproportionate as applied to them. Id. at 70-71, 217 P.3d 659; see also id. at 74, 217 P.3d 659 ("Not only does defendant's criminal conduct appear insufficiently grave to justify the mandatory six-year and three-month sentence, but it also is less severe than the conduct in the vast majority of (and probably in all) other reported first-degree sexual abuse cases since Measure 11 was passed.").
Here, by contrast, the relevant statutes do not describe a wide array of conduct subject to the same penalty; instead, the crimes are defined quite narrowly. For example, ORS 475.890 provides that, subject to a few exceptions, "it is unlawful for any person to deliver methamphetamine"; similarly, ORS 475.886 makes it "unlawful for any person to manufacture methamphetamine." And, as discussed above, under ORS 475.925 and ORS 475.930, the penalties for those crimes are increased based on the quantities of drugs involved, which the state must plead in the indictment. Thus, unlike Rodriguez/Buck , this is not a case where the graveness of defendant's specific acts in committing the offenses can be measured in comparison to different acts that also fall within the scope of the offense. Instead, defendant's conduct in committing the offenses is essentially the only conduct encompassed within those offenses.
Defendant's theory, nonetheless, is that the mandatory minimum penalties imposed were disproportionate as applied to her-not because her conduct constituting the offenses was less severe than other conduct constituting those offenses-but because she would not have committed that conduct had the government agent not induced her to do so. She also contends that evidence that she engaged in that conduct "out of financial need," and "not because she necessarily desired to become a major drug dealer, per se ," further suggests that the penalty is overly severe. In other words, defendant argues that her reasons for engaging in the criminal conduct somehow makes the conduct itself less severe for purposes of assessing proportionality. However, there is nothing in Rodriguez/Buck , or any of the cases that have followed, to suggest that a person's motivation for committing a crime is a relevant *336 consideration under Article I, section 16, and we see no justification for imputing such a consideration in this case.
Second, defendant argues that we should consider her relative "culpability," but does not explain why the circumstances make her conduct less blameworthy than "an ordinary defendant" convicted of the same crimes. Cf. State v. Sanderlin , 276 Or. App. 574, 576, 368 P.3d 74 (2016) ("Among the characteristics of a defendant that the court should consider [in an Article I, section 16, challenge] is a defendant's diminished capacity."). To be sure, the record establishes that the government informant requested a larger quantity of methamphetamine from defendant each time he arranged for a controlled buy until the amount reached 500 grams, which triggered the mandatory 81-month term. However, defendant readily acquiesced to each of those requests, even going so far as to seek out additional suppliers to meet the informant's demand and driving from Coos Bay to Portland to accomplish that goal. She also provided baggies for the informant to repackage the drugs for resale and told him that she could get him whatever amount he wanted at the price he was willing to pay. In short, defendant has not demonstrated that her conduct was less culpable relative to the universe of other people who commit the same crimes.
Moreover, under the Rodriguez/Buck framework, it is not only relative culpability, but also relative harm-caused or threatened-to the victim or society that is relevant in judging the seriousness of an offense. Rodriguez/ Buck , 347 Or. at 62-63, 217 P.3d 659. And, as the court explained, one of the accepted principles for assessing relative harm is the " 'absolute magnitude' " of the crime; for example, " '[s]tealing a million dollars is viewed as more serious than stealing a hundred dollars-a point recognized in statutes distinguishing petty theft from grand theft.' " Id . at 63, 217 P.3d 659 (quoting Solem v. Helm , 463 U.S. 277, 292-93, 103 S.Ct. 3001, 77 L.Ed. 2d 637 (1983) ). The statutes under which defendant was sentenced here also take into account that principle. Defendant does not explain how her willingness to engage in the criminal conduct of possessing, delivering, and manufacturing large quantities of methamphetamine somehow poses less of a threat to society than other people engaged in that conduct.
Third, in determining whether her sentences are unconstitutionally disproportionate as applied, defendant urges us to compare the sentences she received with those that she would have received had she instead committed "the routine or basic offense[s]." That argument turns the second Rodriguez/Buck factor on its head. In addressing the usefulness of that factor-"a comparison of the penalties imposed for other, related crimes," id . at 58, 217 P.3d 659 -the court explained, "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate,"ibr.US_Case_Law.Schema.Case_Body:v1">15 id. at 63, 217 P.3d 659. See also State v. Davidson , 360 Or. 370, 388, 380 P.3d 963 (2016) (in evaluating the second Rodriguez/Buck factor, "[i]t is useful to compare the seriousness of similar crimes that may result in the same penalty as defendant's sentence, as well as to examine similar yet more serious crimes that may result in a lesser sentence than the one imposed on defendant").
Here, however, defendant does not identify any related but more serious crimes that would yield a lesser penalty than she was subject to; instead, she points by way of comparison to penalties imposed for less serious crimes than the crimes for which she was convicted. Specifically, defendant contends that, had she been convicted of the crimes she was admittedly "predisposed to commit"-that is, selling small quantities of methamphetamine to her friends-she would have been subject to a 19-month, rather than *337 an 81-month, prison term.[16] The proposition that defendant would have received lesser penalties for less serious crimes had she instead committed those crimes is unremarkable; we do not see how it indicates that the penalty imposed for the crimes she did commit are unconstitutionally disproportionate as applied to her.[17]
In sum, the factors identified in Rodriguez/Buck do not assist defendant. Nor has defendant otherwise persuaded us that this is one of those rare circumstances in which the statutorily prescribed penalty is so disproportionate to the offenses that it would "shock the moral sense of reasonable people." Rodriguez/Buck , 347 Or. at 58, 217 P.3d 659 (internal quotation marks omitted). By her own admission, defendant was engaged in selling methamphetamine for a period of almost five years before she became involved with the government informant. Defendant did not seek to raise an entrapment defense to the offenses for which she was ultimately charged, see ORS 161.275(1) (providing that "[t]he commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because the actor was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution"); instead, she pleaded guilty and admitted without qualification to the quantities involved and other enhancements that led to the statutorily mandated sentences she challenges on appeal. She now seeks, in the guise of a proportionality challenge, to essentially undo those admissions. Under the circumstances, this is not an instance in which the mandatory minimum sentences established by the legislature-the body with primary responsibility for ranking the severity of criminal offenses-are so disproportionate when applied to defendant that they violate Article I, section 16.
Affirmed.

All of the references in this opinion to statutes in ORS chapter 475 are to the 2011 version of the statutes, which were in effect when defendant committed the crimes of conviction. Some of those statutes have since been amended. For the same reason, we also cite the 2011 version of ORS 167.222.

Former ORS 138.222 (2015) was repealed in 2017 by Senate Bill (SB) 896, see Or. Laws 2017, ch. 529, § 26. Because the judgment in this case was entered before the January 1, 2018, effective date of SB 896, its provisions do not apply. Or. Laws 2017, ch. 529, § 28 (providing that the repeal of ORS 138.222 applies "on appeal from a judgment or order entered by the trial court on or after the effective date of this 2017 Act"). Accordingly, former ORS 138.222 (2015) governs this case.

Because defendant raises the same legal issue with respect to all of the sentences, which we reject, we need not address whether the sentences on the remaining counts are reviewable because, even if they are, those claims of error would fail for the same reason.

An "eightball" is an eighth of an ounce (approximately 3.5 grams); the "standard going price" for an eightball at the time was $175 to $200. A "teener" is half an "eightball," which was selling for $100 to $125. Defendant testified that she would buy an "eightball" or "teener" for herself and break it into $20, $50, or $100 "sacks" to sell to her friends.

The "going" price at the time for one ounce was $650 to $850; the informant was willing to pay an inflated price.

Specifically, with respect to the counts at issue on appeal, the court sentenced defendant as follows (statutory enhancements in parenthesis):
• Count 3: Delivery of Methamphetamine (substantial quantity consisting of 10 or more grams, for consideration), 21 months
• Count 4: Possession of Methamphetamine (10 grams or more), 30 days
• Count 5: Delivery of Methamphetamine (substantial quantity consisting of 10 or more grams, commercial drug offense, for consideration), 23 months
• Count 6: Possession of Methamphetamine (10 grams or more), 30 days
• Count 7: Delivery of Methamphetamine (substantial quantity consisting of 10 or more grams, for consideration), 21 months
• Count 8: Possession of Methamphetamine (10 grams or more), 30 days
• Count 9: Delivery of Methamphetamine (100 grams or more, substantial quantity consisting of 10 or more grams, for consideration), 46 months
• Count 10: Possession of Methamphetamine (10 grams or more), 10 months
• Count 11: Manufacture of Methamphetamine (500 grams or more, 100 grams or more, substantial quantity consisting of 10 or more grams, commercial drug offense), 81 months
• Count 12: Delivery of Methamphetamine (500 grams or more, 100 grams or more, substantial quantity consisting of 10 or more grams, commercial drug offense, for consideration), 81 months
• Count 13: Possession of Methamphetamine (10 grams or more, commercial drug offense), 25 months.

Article I, section 16, provides, in part, that "all penalties shall be proportioned to the offense."

The state further contends that, because defendant's claims are unreviewable, we also lack jurisdiction to decide the appeal because defendant has failed to present a "colorable claim of error" as required under former ORS 138.222(7). That argument is foreclosed by State v. Silsby , 282 Or. App. 104, 108-09, 386 P.3d 172 (2016), rev. den. , 360 Or. 752, 388 P.3d 726 (2017).

The Supreme Court issued its decision in Althouse after briefing in this case was complete. We take the parties' contentions regarding the effect of that decision from defendant's memorandum of additional authorities and oral argument in the case.

At the time, the Commission was named the Oregon Criminal Justice Council. See Or. Laws 1985, ch. 558, § 2.

That 58- to 130-month range coincides with the range of sentences established for crime seriousness scale 10 on the guidelines grid.

Defendant does not dispute that the trial court correctly applied State v. Miller , 317 Or. 297, 855 P.2d 1093 (1993), to determine her criminal history classification.

The state also points out that there are numerous statutes that now prescribe a crime-seriousness ranking for a particular crime, see, e.g. , ORS 163.147 (second-degree manslaughter and criminally negligent homicide); ORS 163.168 (third-degree assault); ORS 163.196 (aggravated driving while revoked); ORS 813.012 (felony DUII), and, therefore, if we "exempt from the bar in [former ] ORS 138.222(2)(a) any presumptive sentence that is obtained by application of crime-seriousness ranking specially prescribed by a statute" we would "make reviewable a large class of presumptive sentences that the legislature clearly has declared are not reviewable." We disagree with the state's premise. The legislature has declared in former ORS 138.222(2)(a) that presumptive sentences prescribed by the rules of the Commission are not subject to appellate review; the legislature has made no such declaration with respect to sentences for which, as explained below, the legislature itself has prescribed the presumptive sentence by altering one-half of the equation, that is, by substituting its own determination of the seriousness level of an offense for the Commission's.

The state does not point to anything in the text, context, or legislative history of ORS 475.925 and ORS 475.930 suggesting that the legislature intended those statutes to expand the class of presumptive sentences excluded from direct appellate review under former ORS 138.222(2)(a). Cf. Althouse , 359 Or. at 677, 375 P.3d 475 (concluding the same with regard to ORS 137.719(1) ).

For example, in Rodriguez/Buck , 347 Or. at 76, 217 P.3d 659, the court noted that some conduct constituting second-degree sexual abuse-a crime closely related to first-degree sexual abuse-"most people would consider far more serious" than the conduct of the Rodriguez/Buck defendants, yet, the penalty for that conduct would not be subject to Measure 11 and would result in a fraction of the prison term.

Defendant's calculation requires us to assume that defendant would have committed the same type (possession, delivery, and manufacture of methamphetamine) and number of offenses for which she was convicted, but without the quantity or other enhancements that applied in this case. There is no basis for that assumption, and it only serves to further illustrate the flaw in defendant's argument.

Defendant also points to her lack of criminal history, the third Rodriguez/Buck factor, asserting that "[s]entences that are proportionate for a repeat offender may be disproportionate for a first-time offender." Although that is certainly the case, defendant is not a first-time offender for these purposes. Davidson , 360 Or. at 375, 380 P.3d 963 ("In evaluating disproportionality challenges to criminal sentences, it is appropriate for a court to consider any prior conviction, as well as misconduct that did not result in convictions.").