No. 1084 December 17, 2025 681

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TREBOR B. GARDNER-ROLPH,
*Defendant-Appellant.*

Washington County Circuit Court
22CR05611; A181954

Erik M. Buchér, Judge.

Argued and submitted April 3, 2025.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Vacated and remanded for resentencing.

Tookey, P. J., dissenting.

## JACQUOT, J.

Defendant, when he was 13 and 14 years old, committed sex offenses against his stepsister, who is five years younger. He pleaded guilty to those offenses after he turned 18, and the plea agreement left sentencing open. During sentencing, he sought probation rather than incarceration and argued, among other reasons, that probation was appropriate because he was employed at the time of arrest and had no other involvement with the justice system, despite having experienced significant trauma and exposure to violence and adults with substance addictions throughout his childhood. He was sentenced to five years of incarceration. As explained in more detail below, he challenges the way the court imposed the sentences.

Defendant argues that the court was required to sentence him according to ORS 161.740, which provides circumstances that a court "shall" consider when imposing a sentence on "a person who was under 18 years of age at the time of committing the offense[s,]" and erred by failing to do so.[1] ORS 161.740 was passed as a component of a comprehensive bill reforming the state's legal approach to juveniles who have engaged in conduct that would be criminal if committed by an adult. Staff Measure Summary, Senate Committee on Judiciary, Senate Bill (SB) 1008 A, Apr 24, 2019. Defendant argues that the trial court erred in its interpretation of ORS 161.740 and by applying the adult presumptive sentencing guidelines instead. The state argues that we cannot reach his arguments as review is precluded under ORS 138.105(8), which bars judicial review of the length of sentences imposed under the presumptive sentencing guidelines. In this opinion, after providing pertinent background information, we address the question of reviewability. Concluding that the sentencing process used by the court in this instance is reviewable, we proceed with statutory interpretation of ORS 161.740. We consider the text and context of the statute— particularly how it relates to provisions of the adult criminal code and juvenile delinquency code—and the legislative history. We conclude that defendant should have been sentenced

---

[1] Defendant raises five assignments of error, the first of which is dispositive. We, therefore, do not consider defendant's second through fifth assignments of error.

in accordance with ORS 161.740, and we therefore vacate and remand for resentencing.

## I.  BACKGROUND

The relevant procedural facts are undisputed. Defendant was over the age of 18 when he was indicted for sexual conduct against his stepsister that had happened years earlier. He pleaded guilty to first-degree sodomy, ORS 163.405 (Count 3), and three counts of first-degree sexual abuse, ORS 163.427 (Counts 7, 8, and 9). The court dismissed the remaining charges pursuant to a plea agreement, which left sentencing open. He was 21 years old at the time of sentencing. The sentencing court sentenced him as an adult in accordance with ORS 137.669 and the sentencing guidelines established by the Oregon Criminal Justice Commission (OCJC), OAR 213-004-0001.

At sentencing, the state asked the court to impose consecutive presumptive sentences in accordance with ORS 137.669 and OAR 213-004-0001, for a total sentence of 173 months.[2] Defendant argued that "[t]he primary criteria an adult court must consider when sentencing someone who was under 18 years of age when they committed the offense is ORS 161.740."[3] Defendant argued that the court should

---

[2] ORS 137.669 provides, in relevant part: "The guidelines adopted under ORS 137.667, together with any amendments, supplements or repealing provisions, shall control the sentences for all crimes committed after the effective date of such guidelines."

[3] ORS 161.740 provides:

"(1) A court may not impose a sentence of life imprisonment without the possibility of release or parole on a person who was under 18 years of age at the time of committing the offense.

"(2) In determining the appropriate sentence for a person who was under 18 years of age at the time of committing the offense, if the court is provided information concerning the following circumstances, or any other relevant circumstance, the court shall consider those circumstances in imposing the sentence:

"(a) The person's age, intellectual capacity and impetuousness at the time of the offense.

"(b) The person's family and community environment, history of trauma and prior involvement in the juvenile dependency system at the time of the offense.

"(c) The person's ability at the time of the offense to appreciate the risks and consequences of the conduct constituting the offense.

"(d) The person's community involvement prior to the offense.

impose probation based on the enumerated reasons under ORS 161.740 including submission of a comprehensive psychosexual evaluation conducted by a licensed psychologist, as well as factors provided in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009). The Department of Community Corrections (DCC) requested that the court sentence defendant to five years of probation, including imposition of several conditions such as sexual offender registration and substance abuse evaluation and treatment if recommended by an evaluator. The DCC officer wrote in their extensive report that defendant "experienced one of the most disturbing childhoods I have come across in my twenty-seven years in the corrections field," and that throughout his childhood, defendant was not taught anything "much beyond violence" and was mostly left to fend for himself.

The sentencing court rejected defendant's argument that ORS 161.740 controlled and determined that the adult sentencing guidelines and grid applied to defendant, and

"(e) Any peer or familial pressure to which the person was subjected at the time of the offense.

"(f) Whether and to what extent an adult was involved in the commission of the offense.

"(g) The person's capacity for rehabilitation.

"(h) The person's school records and special education evaluations.

"(i) Any other mitigating factors or circumstance presented by the person.

"(3)(a) If the court is provided with a report of a mental health evaluation of the person, the court shall give the evaluation substantial weight in imposing the sentence if:

"(A) The evaluation was conducted by a psychiatrist or psychologist whose primary practice involves the treatment of adolescents; and

"(B) The report includes the assessment of the person's degree of insight, judgment, self-awareness, emotional regulation and impulse control.

"(b) Paragraph (a) of this subsection does not constitute a requirement that a person obtain or submit an evaluation for sentencing.

"(4) When sentencing a person who was under 18 years of age at the time of committing the offense, under no circumstances may the court consider the age of the person as an aggravating factor.

"(5) When sentencing a person who was under 18 years of age at the time of committing an offense to a term of imprisonment, the court shall indicate in the judgment:

"(a) The age of the person at the time of committing the offense; and

"(b) That the person is eligible for a hearing and release under ORS 144.397."

that mitigating or aggravating factors could be considered for departure from the presumptive sentences. The sentencing court acknowledged that had defendant received a risk assessment, treatment or other interventions when he was a juvenile, his risk of reoffending may have been exceedingly low, but that "[h]e's not a juvenile. He was when [the offenses] happened. He's not now."[4] The court sentenced defendant within the presumptive range of sentences according to the adult sentencing guidelines and imposed a 60-month sentence on Count 3; 28 months on Count 7 to be served concurrently; 40 months on Count 8 to be served concurrently; and 45 months on Count 9 to be served concurrently. The court also imposed 10 years (minus time served) of post-prison supervision and several sex-offender-related conditions.

## II. REVIEWABILITY

The state argues that ORS 138.105(8) forecloses our authority to review defendant's sentence and that we "must summarily affirm the judgment" as unreviewable under a line of cases including *State ex rel Huddleston v. Sawyer*, 324 Or 597, 605-07, 932 P2d 1145, *cert den*, 522 US 994 (1997). We disagree.

ORS 138.105 provides, in relevant part:

"(7)　Except as otherwise provided in subsections (8) and (9) of this section, the appellate court has authority to review any sentence to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence.

"(8)　Except as otherwise provided in subsection (9) of this section, for a sentence imposed on conviction of a felony committed on or after November 1, 1989:

"(a)　The appellate court has no authority to review:

"(A)　A sentence that is within the presumptive sentence prescribed by the rules of the [OCJC]."

The state argues that because defendant received a guideline sentence, that ORS 138.105(8) precludes review

---

[4] It is unclear from the record whether the sentencing court believed that ORS 161.740 directed consideration of circumstances mitigating or aggravating the presumptive sentences or whether it believed that ORS 161.740 did not apply in defendant's circumstance at all.

even when, as here, a defendant argues that the trial court's error was to sentence defendant under the guidelines, rather than a separately applicable statute. Defendant, in contrast, argues that the plain terms of ORS 138.105(7) provide for review because it was error for the trial court to apply a grid block sentence pursuant to the guidelines in contravention of ORS 161.740.

Although ORS 138.105(8) precludes judicial review of a challenge to the *length* of an imposed presumptive sentence, our case law establishes that it does not preclude review of other challenges. We begin by noting that ORS 138.105(7) and (8) were drawn largely from *former* ORS 138.222, *repealed by* Or Laws 2017, ch 529, § 26.[5] Provisions of ORS 138.105 that restate prior statutory provisions are controlled by prior precedent construing those provisions, absent indication of an intent to displace prior precedent. *See, e.g.*, *State v. Rusen*, 369 Or 677, 692-94, 509 P3d 628 (2022) (discussing role of prior precedent in construing ORS 138.105); *State v. Davis-McCoy*, 300 Or App 326, 328-30 & n 2, 454 P3d 48 (2019) (same).

We previously construed the verbatim predecessors to ORS 138.105(7) and (8)(a)(A), with respect to felony sentences—to preclude review only of challenges to the *length* of a guideline sentence, not challenges implicating aspects of the sentence apart from its length. *State v. Vargas*, 271 Or App 675, 677-78, 352 P3d 743 (2015); *State v. Casiano*, 214 Or App 509, 515-16, 166 P3d 599 (2007). In *Vargas*, 271 Or App at 678, quoting *Casiano*, 214 Or App at 515, we explained that *former* "ORS 138.222(2)(a) addresses challenges to the length of a sentence that is within the presumptive range; it does not preclude review of 'aspects of a

_____

[5] As applicable to this case, ORS 138.105(7), which was enacted by Or Laws 2017, ch 529, § 13, was drawn from *former* ORS 138.222(4)(a) and expanded the scope of appellate review to apply to appeals from judgments of conviction for misdemeanors (not just felonies committed after November 1, 1989). Oregon Law Commission Report, Joint Subcommittee on Public Safety, SB 896, June 5, 2017, 21 & n 20. Similarly, ORS 138.105(8)(a)(A) was "intended to restate the limits on reviewability of sentences imposed on convictions for felonies *** subject to the [OCJC] Sentencing Guidelines" that had previously been set forth in *former* ORS 138.222(2)(a) through (c). *Id.* at 21.

When citing *former* ORS 138.222 in this opinion, for readability and because none of the amendments to the language of that statute are material to our analysis in this case, we do not include a year.

presumptive sentence other than the length of the sentence as imposed.'" (Internal brackets omitted.). We determined that "[b]ecause [the] defendant [was] challeng[ing] the court's failure to merge the findings of guilt, not the length of the concurrent, presumptive sentences," review was not precluded. *Vargas*, 271 Or App at 678.

Defendant's appeal in this case is similar to those in *Vargas* and *Casiano*. Defendant challenges a ruling by the court pertaining to the applicability of ORS 161.740. As was the case with its statutory predecessor, ORS 138.105 (8)(a)(A) does not preclude review of the sentencing challenge at issue in this case.

The conclusion that defendant's challenge is reviewable is also supported by *State v. Craig*, 337 Or App 38, 41, 563 P3d 389 (2024), in which we determined that, although pursuant to ORS 138.105(5), we have "'no authority to review the validity of the defendant's plea of guilty or no contest, or a conviction based on the defendant's plea of guilty or no contest,' subject to exceptions not applicable here," we did have authority pursuant to ORS 138.105(7) to review a challenge based on a sentencing court's purported "'fail[ure] to comply with requirements of law in imposing or failing to impose a sentence.'" In *Craig*, we explained that a challenge seeking "the court to comply with the requirements of law for imposing a sentence on a guilty or no-contest plea is fundamentally different from challenging the validity of the plea or conviction." 337 Or App at 41. *Craig* is analogous to this case because defendant's challenge is about whether the sentencing court complied with the requirements of law when imposing the sentence on defendant.

The parties dispute the applicability of *State v. Althouse*, 359 Or 668, 375 P3d 475 (2016), in which the Supreme Court determined a presumptive sentence imposed pursuant to ORS 137.719 was reviewable. The court determined that *former* ORS 138.222 did not bar review in that case because the imposed sentence was not prescribed by the OCJC rules, rather it was prescribed by a separate statute, ORS 137.719. *Althouse*, 359 Or at 678. Defendant argues that *Althouse* supports review of his sentence because, even though the court imposed a presumptive sentence

prescribed by the rules of the OCJC, the court should not have done so. The state argues that defendant "misses the point" of *Althouse*, and that, consistent with *Althouse*, defendant's sentence is unreviewable because it was an imposition of a presumptive sentence prescribed by the rules of the OCJC. *Althouse* makes no pronouncement that a challenged sentence is unreviewable when a presumptive sentence prescribed by the rules of the OCJC is erroneously imposed on a defendant when a separate statute governs sentencing for the offenses. For the reasons provided below, we determine that a presumptive sentence prescribed by the rules of the OCJC should not have been imposed on defendant, and thus, *Althouse* does not bar review.

Arguing for a different conclusion, the state points to *Huddleston*, 324 Or at 605-07; *State v. Fernandez*, 334 Or App 81, 87, 555 P3d 350, *rev allowed*, 373 Or 121 (2024); and *State v. Guyton*, 126 Or App 143, 149, 868 P2d 1335, *rev den*, 319 Or 36 (1994), *overruled by State v. Hoffmeister*, 164 Or App 192, 195-97, 990 P2d 910 (1999).[6] With respect to *Huddleston*, we have already rejected the state's proffered interpretation of that case in *Casiano*, 214 Or App at 515: "[N]othing in [*Huddleston*] indicates that aspects of a presumptive sentence other than the length of the sentence *as imposed* are unreviewable under [*former*] ORS 138.222(2)(a) and 138.222(4)(a)."[7] (Emphasis in *Casiano*.) The state's reliance on *Fernandez*, 334 Or App at 87, is misplaced because that case involved a challenge to the *length* of an imposed sentence. The defendant argued that the imposed sentence was disproportionately too long. *Id.* at 82. Because we determine

---

[6] Although the state cites *Guyton*, in *Hoffmeister*, 164 Or App at 195-97, we determined that appellate court review was not precluded when a "defendant was initially sentenced under grid block 7-I," and "later received a twenty-one month sanction that is not within the presumptive sentence prescribed by grid block 7-I." We explained that "to the extent that *Guyton* is inconsistent with our disposition of [*Hoffmeister*], *Guyton* is overruled." *Id.* at 196.

[7] Relying on *Huddleston*, the dissent suggests that reviewability may only be reached in this case if ORS 161.740 is considered to have "'impliedly repealed'" sentencing guidelines for offenders in the same category as defendant, and "that repeal by implication *** must be established by 'plain, unavoidable, and irreconcilable repugnancy.'" 345 Or App at 720-21 (Tookey, P. J., dissenting). Our task is to faithfully engage with what result the legislature intended by its passage of ORS 161.740. *See State v. Gaines*, 346 Or 160, 166, 206 P3d 1042 (2009) (providing that we consider the text, context, and legislative history to resolve the legislature's intent).

below that the legislature mandated a separate sentencing structure for a certain class of offenders who were juveniles at the time their offenses were committed—a qualitative and not a quantitative difference—the challenge raised by defendant is reviewable, and we must determine ORS 161.740's role as it relates to defendant's sentencing.

## III.    ANALYSIS OF ORS 161.740

To determine the meaning of a statute, we attempt to determine the legislative intent, as evidenced by the text and context of the statute and any legislative history that is useful to the analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). "[W]e have an independent duty to correctly interpret any statute that comes before us, regardless of the arguments and interpretations offered by the parties." *Strasser v. State of Oregon*, 368 Or 238, 260, 489 P3d 1025 (2021).

We presume that the legislature intended terms of common usage "to have [their] plain, natural, and ordinary meaning." *Gaines*, 346 Or at 175 (citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993)); *Jenkins v. Board of Parole*, 356 Or 186, 194, 335 P3d 828 (2014) (dictionary definitions can provide useful insight about ordinary meaning). We accept an express definition for a statutory term, if one is provided by the legislature. *See State v. Kimble*, 236 Or App 613, 618-19, 237 P3d 871 (2010) (explaining that when an express definition is not provided by the legislature, we employ other interpretive methods). We generally "assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention." *Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 175, 339 P3d 428 (2014). "If the legislature uses different terms in statutes, we generally will assume that the legislature intends different meanings for those terms." *State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) (internal quotation marks and citation omitted).

We examine the meaning of statutory text in context, which includes, as relevant to this case, "other provisions of

the statute of which the disputed provision is part," *Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008), other statutes in the same chapter in which the provision has been codified, *see Morsman v. City of Madras*, 203 Or App 546, 561-62, 126 P3d 6, *rev den*, 340 Or 483 (2006) (so analyzing), "other provisions of the bill originally approved by the legislature," *Warrenton Fiber Co. v. Dept. of Energy*, 283 Or App 270, 277, 388 P3d 372 (2016), and "related statutes," *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). The legislative history of other related statutes is "considered part of the broader context of a statute." *State v. Stamper*, 197 Or App 413, 420, 106 P3d 172, *rev den*, 339 Or 230 (2005).

We begin our consideration of ORS 161.740 by interpreting when ORS 161.740 applies to sentencing a defendant, before turning to the relationship between ORS 161.740 and presumptive sentences.

A.  *When ORS 161.740 Applies in Sentencing a Defendant*

ORS 161.740 "appl[ies] to sentences imposed on or after January 1, 2020," Or Laws 2019, ch 634, § 32, for convictions in adult criminal court. The text of ORS 161.740(1) provides that a court may not impose a life sentence "on a person who was under 18 years of age at the time of committing the offense." ORS 161.740(2) provides that in sentencing "a person who was under 18 years of age at the time of committing the offense," the court "shall consider" the circumstances enumerated in the statute as well as "any other relevant circumstances."[8] Separately, ORS 419C.005 provides that "[t]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act that is a violation ***." Thus, when ORS 161.740 is read in context, it governs sentencing if (1) the offense was committed when the defendant was under 18 years of age, (2) the defendant was convicted in adult court, either because the defendant was over 18 years of age when indicted or because the defendant was waived into adult court pursuant to ORS 419C.349, and (3) the sentence was imposed on or after January 1, 2020.

---

[8]  Similarly, ORS 161.740(4) and (5) each contain the phrase, "When sentencing a person who was under 18 years of age at the time of committing an offense ***."

B.   *The Relationship Between ORS 161.740 and Presumptive Sentences*

Turning to the relationship between ORS 161.740 and presumptive sentences, there are at least two plausible interpretations. The first being that ORS 161.740 functions as an overlay to presumptive sentencing prescribed by other statutes and the OCJC guidelines, meaning that the presumptive sentences still apply but that the court must consider the dictates of ORS 161.740 in fashioning the ultimate sentence.[9] For example, under that interpretation, if a court were imposing a sentence for a conviction subject to the OCJC guidelines presumptive sentences, ORS 161.740(2) and (3) would require the court to consider the provided criteria in determining whether to impose a sentence at the high or low end of the grid block and whether there is a "substantial and compelling reason[] to impose a departure," OAR 213-008-0001; *see also* ORS 137.671 (authorizing a court to depart from a presumptive sentence "if it finds there are substantial and compelling reasons justifying a deviation").

A second plausible interpretation is that when ORS 161.740 was enacted, it displaced application of the OCJC presumptive sentencing guidelines to defendants sentenced for conduct that they engaged in before they reached 18 years of age.[10] Under that interpretation, ORS 161.740 shifted the power to determine how to sentence defendants whose offense occurred before adulthood from the OCJC back to the court, and directed consideration of the sentence pursuant to the criteria expressed in ORS 161.740.

C.   *Text and Context*

The text of ORS 161.740 does not unambiguously support either interpretation. A number of other statutes make their relationship to the OCJC guidelines clear through

---

[9] The state argues that ORS 161.740 does not displace the sentencing guidelines prescribed by the OCJC rules and that it "merely requires the court to 'consider' certain factors, and it does not either require or authorize a court to impose any particular disposition based upon that consideration. *** [O]n its face, [it does not] purport to authorize *** a downward or dispositional departure that would not otherwise be allowed under the guidelines."

[10] Defendant argues that "ORS 161.740 overrides the [OCJC sentencing] guidelines," and "prescribes the sentence that a court may impose for a person whose offenses [occurred] when they were under 18."

explicit language; ORS 161.740 does not. For example, ORS 161.737, the statute immediately preceding ORS 161.740, makes clear that its function is to "constitute substantial and compelling reasons to depart from the presumptive sentence as provided by the rules of the [OCJC]," with regard to sentencing certain "dangerous offender[s]," using phrases that explicitly reference the OCJC, including "guidelines," "departure," and "presumptive sentence." ORS 161.740 does not provide any reference to the OCJC, and it does not include the terms "rules," "guidelines," "departure," or "presumptive sentence." The legislature has used such phrases when enacting statutes designed to overlay the guidelines (such as ORS 161.737), and thus, the legislature understands how to clearly craft statutes that are meant to function in tandem with the guidelines, and the exclusion of such phrases may suggest that the legislature did not intend for ORS 161.740 to overlay the guidelines. *See, e.g.*, *Blacknall v. Board of Parole*, 348 Or 131, 140-41, 229 P3d 595 (2010) (legislative silence can be an indicator of policy choices). However, because legislative silence is not the strongest indicator of legislative intent, the absence of any such phrases does not strongly support one interpretation or the other. *See, e.g.*, *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 129, 379 P3d 462 (2016) (legislative silence is often unhelpful).

The plain text of ORS 161.740 suggests that the statute was intended to provide the sentencing court with more discretion regarding its sentencing decisions. Rather than referencing a presumptive sentence, ORS 161.740(2) refers to "the *appropriate sentence*." (Emphasis added.) Although the phrase "appropriate sentence" does not appear in any other statutes or the Oregon Administrative Rules, the phrases "appropriate placement" and "appropriate type of placement" appear in the juvenile delinquency code, regarding the juvenile court's discretionary authority to determine whether an adjudicated youth should receive any type of medical or psychological treatment in lieu of or in addition to another disposition. ORS 419C.507. "Appropriate" also appears in other statutes regarding a court's discretionary authority.[11] *See,*

---

[11] OAR 213-002-0001(3)(d) provides:

"Subject to the discretion of the sentencing judge to deviate and impose a different sentence in recognition of aggravating and mitigating

*e.g.*, ORS 419C.462 (juvenile court's discretion to order an adjudicated "youth to perform appropriate community service"); ORS 419C.465 (juvenile court's discretion to order an adjudicated youth to perform "appropriate" service for the victim); ORS 419C.133 ("No youth under 12 years of age shall be placed in detention except pursuant to judicial review and written findings \*\*\*. \*\*\* [A] juvenile court judge \*\*\* must determine \*\*\* that appropriate alternative methods of controlling the youth's behavior are unavailable."); ORS 419C.489 (juvenile court may indicate, in general terms, medical care or special treatment "appropriate" for an adjudicated youth); ORS 419C.441 (juvenile court may order that an adjudicated youth undergo "appropriate care or treatment"); ORS 426.125 (for an individual who has been determined to be mentally ill, should the court order conditional release, the court may establish "appropriate" conditions).

The legislature's decision to require a court to impose an "appropriate sentence" under ORS 161.740(2) is in contrast to the legislature's choice of including the phrase "presumptive sentence" or "presumptive sentence range" in other criminal code statutes, such as ORS 135.407 and ORS 161.737. *See Newell*, 238 Or App at 392 (different terms used in different statutes typically indicates a different intended meaning). "Presumptive sentence" is defined to mean

> "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history or a sentence designated as a presumptive sentence by statute."

OAR 213-003-0001(16). The OCJC presumptive sentence guidelines were established to "reduce[] the trial court's discretion in sentencing." *Rodriguez/Buck*, 347 Or at 86 (De Muniz, C. J., concurring in part, dissenting in part); *see State v. Davis*, 315 Or 484, 486-87, 847 P2d 834 (1993)

---

circumstances, the *appropriate punishment* for a felony conviction should depend on the seriousness of the crime of conviction when compared to all other crimes and the offender's criminal history."

(Emphasis added.) From that, we draw two meaningful points of consideration: (1) that the use of "appropriate" in OAR 213-002-001(3)(d) references a court's exercise of discretion, and (2) that the OAR includes an emphasis on punishment that is absent from ORS 161.740.

(discussing the creation and purposes of the guidelines). The legislature has used the phrase "presumptive sentence" in a great number of criminal statutes when indicating that there is a presumptive sentence—based either in the OCJC guidelines or in an independent statute—that ought to be imposed unless a court determines otherwise. *See* ORS 135.407; ORS 137.712 - 137.725; ORS 161.737; ORS 164.063; ORS 475.935 (including the phrase "presumptive sentence"). That the legislature *did not* use the phrase "presumptive sentence" in ORS 161.740 suggests that the legislature did not intend ORS 161.740 to function as an overlay to a presumptive sentence provided by another source of law (either by statute or OCJC guidelines).

In order to better understand the plain text of ORS 161.740, we interpret the meaning of "determining the appropriate sentence" by considering the ordinary meaning of "determine" and "appropriate." Apt definitions of "determine" are "to come to a decision concerning as the result of investigation or reasoning" and "to settle or decide by choice of alternatives or possibilities." *Webster's Third New Int'l Dictionary* 616 (unabridged ed 2002). The apt definition of "appropriate" is "correct or suitable for some purpose or situation." *Merriam-Webster Unabridged Dictionary*, https://unabridged-merriam-webster-com/unabridged/appropriate (accessed Dec 4, 2025); *Webster's* at 106 ("specially suitable"). Thus, ORS 161.740 directs a court to utilize investigation or reasoning to come to a decision about the correct or suitable sentence. Such an interpretation is supported by the inclusion of the term consider—"the court shall consider" the enumerated circumstances and any others that are relevant. ORS 161.740(2). The applicable definition of "consider" is "to reflect on : think about with a degree of care or caution." *Webster's* at 483. The plain text of ORS 161.740 strongly indicates that the legislature intends that the sentencing court exercise discretion, including reflecting on the relevant circumstances, with care or caution, in determining the sentence of an adult convicted for conduct that occurred while they were a juvenile.

Given that the meaning of "determining the appropriate sentence" indicates a significant amount of discretionary

decision-making by the court, the statute seems to be at odds with the definition of "presumptive sentence," OAR 213-003-0001(16), and the legislature's intent that the OCJC guidelines and presumptive sentences reduce judicial discretion, *Rodriguez/Buck*, 347 Or at 86 (De Muniz, C. J., concurring in part, dissenting in part). Therefore, the use of the phrases "determining the appropriate sentence" and that the court "shall consider" more likely support the second possible interpretation.

Another indication that ORS 161.740 is intended to displace the grid block presumptive sentences is its similarity to the statute that governs dispositions for adjudicated youth, ORS 419C.411.[12] The circumstances enumerated in ORS 161.740 are similar to criteria that juvenile courts must consider when exercising discretion to determine a disposition for an adjudicated youth pursuant to ORS 419C.411. Although there are some differences, ORS 161.740 and ORS 419C.411 contain similarities in form and content that support an inference that the legislature intended to authorize a similar grant of discretionary authority to sentencing courts under ORS 161.740 as to juvenile courts under ORS 419C.411.[13]

---

[12] ORS 419C.411 provides, in illustrative part:

"(3) *** [I]n determining the disposition of the case [regarding an adjudicated youth], the court shall consider each of the following:

"*****

"(b) Whether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful;

"*****

"(e) The adjudicated youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders.

"(4) In addition to the factors listed in subsection (3) of this section, the court may consider the following:

"(a) Whether the adjudicated youth has made any efforts toward reform or rehaibilitation or making restitution;

"(b) The adjudicated youth's educational status and school attendance record;

"(c) The adjudicated youth's past and present employment;

"*****

"(f) The adjudicated youth's mental, emotional and physical health and the results of the mental health or substance abuse treatment; and

"(g) Any other relevant factors or circumstances raised by the parties."

[13] The case before us does not present an opportunity to determine the authority of a court pursuant to ORS 161.740, if the court is not provided with

For example, both statutes provide for consideration of the person's school records and involvement, ORS 161.470(2)(h) and ORS 419C.411(4)(b), efforts and capacity for rehabilitation, ORS 161.740(2)(g) and ORS 419C.411(4)(a), and mental health, ORS 161.740(3) and ORS 419C.411(4)(f). Unlike presumptive grid block sentences, those considerations reflect the legislature's intention that individuals whose violative conduct occurred before turning 18 years of age must receive more individualized consideration in fashioning a sentence.

Another textual feature of ORS 161.740 that supports the second interpretation is that ORS 161.740 does not provide for sentencing a defendant. Rather, the statute provides for sentencing "a *person* who was under 18 years of age ***." (Emphasis added.) The term "person" is used more than a dozen times to refer to the individual being sentenced pursuant to ORS 161.740; the term "defendant" never appears. The juvenile delinquency code, which focuses on "personal responsibility, accountability and reformation within the context of public safety," and not criminal punishment, ORS 419C.001, also does not use the term "defendant." *Cf., e.g.*, ORS 137.106 and ORS 137.124 (adult criminal statutes including the term "defendant").[14] In context, ORS 161.740's repeated reference to the individual being sentenced as a "person" and not a "defendant" suggests that the legislature intended ORS 161.740 to operate more like the juvenile delinquency code, which authorizes the juvenile court discretion to determine a disposition, rather than constraining the court via presumptive sentences.

D.  *Legislative History*

---

any of the information contemplated in ORS 161.740(2) or (3). We offer no opinion about that other than to say, given the availability of presentence reports, *see, e.g.*, ORS 144.791, we assign little importance to the legislature's inclusion of that phrase, and it does not elucidate nor obfuscate the statute's meaning. Furthermore, "rules" of interpretation, such as giving clear effect to all words in a provision, provide "mere assumptions that always give way to more direct evidence of legislative intent." *State v. Lane*, 357 Or 619, 629, 335 P3d 914 (2015).

[14] The usage of the term "defendant" persists in adult criminal sentencing statutes that have been amended recently and after the enactment of ORS 161.740; thus, the use of the term "person" in ORS 161.740 cannot be explained as simply a more contemporary word choice. *See, e.g.*, ORS 137.124, *amended by* Or Laws 2023, ch 117, § 1.

To aid in determining the legislative intent, we also consider the available legislative history. *Gaines*, 346 Or at 171. Comments by legislators in committee hearings, *see State v. Baker-Krofft*, 348 Or 655, 664-65, 239 P3d 226 (2010) (relying on hearing recordings), and the Staff Measure Summary can be important sources for understanding legislative intent, *see State Treasurer v. Marsh & McLennan Companies, Inc.*, 353 Or 1, 12-13, 292 P3d 525 (2012) (relying on a Staff Measure Summary). When testimony is provided by nonlegislators who were drafters or key proponents of a bill, and it is clear that the legislature relied on their comments, that testimony can be a persuasive source of legislative history. *Kohring v. Ballard*, 355 Or 297, 311-12, 325 P3d 717 (2014); *see, e.g.*, *Ogle v. Nooth*, 254 Or App 665, 672, 298 P3d 32 (2013), *rev'd in part on other grounds*, 355 Or 570, 330 P3d 572 (2014) (statement of Assistant Attorney General in support of proposed amendments to Post-Conviction Hearing Act); *Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 596-97, 288 P3d 958 (2012) (relying on statements of Oregon State Bar representatives as to intended meaning of proposed bill).

The Staff Measure Summary of SB 1008 provides, in part:

> "[T]he Senate Committee on Judiciary convened a work group to examine the treatment of youth in the juvenile and criminal justice system under [Measure 11 as codified]. The work group was composed of a wide range of local stakeholders and national experts who collectively examined case law, brain science, best practices, national trends, and relevant data to better understand whether Oregon law, and specifically whether [Measure 11], ensure justice for victims, effectively protect the public, hold juvenile offenders accountable, and provide opportunities for reformation and rehabilitation that reduce recidivism and promote a productive citizenry. [SB] 1008 * * * is a product of that work group."[15]

---

[15] Measure 11, a 1994 ballot initiative that was reaffirmed by voters in 2000, requires the imposition of lengthy mandatory minimum sentences for certain criminal convictions. Prior to the passage of SB 1008, it was mandatory to prosecute juveniles accused of committing certain Measure 11 offenses in adult criminal court, and convictions of those individuals required the imposition of Measure 11 mandatory minimum sentences. *See former* ORS 13.707 (2017); Staff Measure Summary, Senate Committee on Judiciary, SB 1008 A, 2, Apr 24, 2019.

Senate Committee on Judiciary, SB 1008 A, 2, Apr 24, 2019. The summary describes that under the law in effect prior to enactment of SB 1008, many offenders who committed violative conduct before 18 years of age were subject to the jurisdiction of the juvenile court, but that in several exceptional circumstances, those individuals were subject to adult criminal court, including mandatory prosecution in adult criminal court in some instances. The summary goes on to explain that after Measure 11 went into effect, the United States Supreme Court had "struck down the death penalty for juveniles * * * [as a form of] cruel and unusual punishment"; "struck down life-without-parole sentences for non-homicide offenses, holding that states must give juveniles the opportunity to obtain release"; and that one decision by the Supreme Court, *Montgomery v. Louisiana*, 577 US 190, 136 S Ct 718, 193 L Ed 2d 599 (2016) "applied retroactively to individuals serving life-without-parole for crimes they committed while juveniles. Twenty-one states currently ban life-without-parole sentences for juveniles." Senate Committee on Judiciary, SB 1008 A, 3, Apr 24, 2019.

In *Miller v. Alabama*, 567 US 460, 476, 132 S Ct 2455, 183 L Ed 2d 407 (2012), one of the cases cited and explained in the summary of SB 1008, the Supreme Court explained that "just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in assessing [their] culpability." (Internal quotation marks, brackets and citation omitted.) *Miller* provides that young offenders have "diminished culpability and heightened capacity for change * * *." *Id.* at 479.

The summary continues by highlighting several of the significant ways that SB 1008 would expand opportunities for individuals whose violative conduct occurred before 18 years of age to be adjudicated in juvenile court, expand the age range of young adults eligible to be housed in OYA custody, and increase opportunities for conditional release hearings. SB 1008 made unequivocal changes to certain sentencing and incarceration practices regarding individuals whose violative conduct occurred before 18 years of age. Some

of those changes included expanding eligibility for "second look hearings," with the possibility of release if an offender has been successfully rehabilitated, ORS 420A.203, creating the possibility for release after 15 years of imprisonment if the person has successfully matured and been rehabilitated, ORS 144.397, and creating a waiver hearing process regarding violative conduct committed when an individual was 15, 16, or 17 years of age rather than automatically sending those individuals to adult criminal court, ORS 419C.349. Senate Committee on Judiciary, SB 1008 A, 1-3, Apr 24, 2019.

Regarding what was ultimately codified as ORS 161.740, the summary provides that the statute

"[p]rohibits the court from sentencing a juvenile defendant who committed an offense before age 18 to life without parole. Provides a list of factors for the court to consider when sentencing a juvenile defendant who committed an offense before age 18. Requires the court to give substantial weight to a qualifying mental health evaluation of a juvenile defendant who committed an offense before age 18 *** includ[ing] an assessment of the person's degree of insight, judgment, self-awareness, emotional regulation, and impulse control."

*Id.* at 1. And it provides for the requirements now codified as ORS 161.740(4) and (5).

During a hearing regarding SB 1008, then-Attorney General Ellen Rosenblum spoke about the "important distinction" between youth conduct and adult conduct, noting that there are different considerations about impulsivity, culpability, and the capacity for reformation. Video Recording, Senate Committee on Judiciary, SB 1008, Mar 28, 2019, at 0:07:55 (statement of Attorney General Ellen Rosenblum), https://olis.oregonlegislature.gov (accessed Nov 13, 2025). She continued by emphasizing the importance of "a deep and critical reflection on the fairness of our juvenile justice system." *Id.* The then-Vice-Chair of the Oregon Board of Parole and Post-Prison Supervision also testified in support of the legislation and spoke about "significant developments in psychology, psychiatry, brain development science, and *** Supreme Court case law" informing the way our legal system treats juvenile offenses. *Id.* at 1:50:20

(statement of Michael Hsu), https://olis.oregonlegislature.gov (accessed Nov 13, 2025).

Senators Manning, Jr. and Winters, the then-Director of OYA, the then-Director of DOC, and other stakeholders also spoke in support of the legislation as fundamentally altering the way harmful conduct that occurred before age 18 is addressed by our legal system. *Id.* at 0:05:32 (statement of Sen James Manning, Jr.); 0:11:48 (statement of Sen Jackie Winters); 0:22:55 (statement of Joe O'Leary); 0:17:59 (statement of Colette Peters). One particularly instructive comment in understanding the language that is now codified as ORS 161.740 was provided by Colette Peters, the then-Director of DOC. *Id.* at 0:17:59. She explained that based on relevant brain science, it is inappropriate to commit an individual for a lengthy sentence if that individual's brain was not fully developed at the time of the conduct. *Id.* She also remarked that keeping individuals who committed violative conduct before the age of 18 out of DOC, "in almost every case, is better public safety * * *. We know that mixing youth criminal thinking with adult criminal thinking creates adult criminal thinking," and she explained that sending youth offenders to DOC increases the likelihood of recidivism. *Id.*

That legislative history makes clear that the enacting body regarded SB 1008 as implementing fundamental changes to the legal code regarding violative conduct that occurred before an individual reached 18 years of age, requiring a significantly greater focus on brain science and development, nuanced understanding of culpability, likelihood of rehabilitation and treatment efficacy, and offender accountability, while deemphasizing mandatory punishment. The legislative history confirms what our textual analysis strongly supports—that ORS 161.740 was intended to displace the OCJC presumptive sentences.

E.  *Meaning of ORS 161.740*

In sum, if the three characteristics provided above regarding who must be sentenced under ORS 161.740 are met, we conclude that ORS 161.740 requires a sentencing court to exercise its discretion by fashioning an appropriate sentence, without being bound by presumptive sentences

provided in the OCJC guidelines.[16] The sentencing court is guided and bound by the provisions of ORS 161.740, including that when a court is provided information concerning the enumerated ORS 161.740(2) circumstances or any other relevant circumstances, the court must consider that information. Additionally, a court must give "substantial weight" to a mental health evaluation if one is provided per ORS 161.740(3), the court may not consider the defendant's age as an aggravating factor per ORS 161.740(4), and the court must comply with the procedural requirements of ORS 161.740(5). ORS 161.740 does not prohibit a sentencing court from imposing a lengthy term of incarceration should one be appropriate in light of the enumerated guidance of the statute; although, just because it is possible that an appropriate consequence for one individual includes a lengthy sentence does not suffice to justify depriving a defendant of the consideration that the legislature envisioned and enacted into law.

## IV.   APPLICATION OF ORS 161.740

Because defendant was sentenced for offenses committed when he was under 18 years of age; he was convicted in adult criminal court; and the sentence was imposed on or after January 1, 2020, the sentence should have been imposed under ORS 161.740.

Defendant provided the court with a mental health evaluation and other information regarding circumstances per ORS 161.740(2) and (3). Thus, the court was required to consider any information regarding the ORS 161.740(2) circumstances and, if the mental health evaluation met the ORS 161.740(3) criteria, then the court was required to give it substantial weight.

When announcing defendant's sentence from the bench, the court explained that Measure 11 and Jessica's Law were inapplicable due to defendant being convicted for conduct that occurred before he turned 15, and acknowledged that although the charges could carry consecutive sentences, they would be run concurrently "because of [defendant's]

---

[16]  Because the issue is not before us, we express no opinion as to the relationship between ORS 161.740 and other statutes that impose presumptive sentences for specific offenses or in specific circumstances.

age at the time of the incident[s]."[17] The court determined that "an appropriate sentence" for defendant would include 60 months of prison time with eligibility for "any time reductions and treatment programs." The court also expressed that it was imposing the sentence "by following the grid block."

Because it is not clear that the sentencing court applied ORS 161.740 and exercised its discretion consistent with the requirements of ORS 161.740, we vacate and remand for resentencing.

Vacated and remanded for resentencing.

**TOOKEY, P. J.,** dissenting.

ORS 138.105(8) provides that this court has "no authority to review" on direct appeal "[a] sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission."

Notwithstanding that unambiguous directive from the legislature, the majority concludes that defendant's sentence—which is in fact within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission (OCJC) for his crimes—is reviewable on direct appeal. The majority so concludes because, in its view, although "ORS 138.105(8) precludes judicial review of a challenge to the *length* of an imposed presumptive sentence, our case law establishes that it does not preclude review of other challenges." 345 Or App at 687 (emphasis in original).

To reach its conclusion that defendant's challenge to his sentence is reviewable, the majority relies on two cases not cited by the parties—*State v. Casiano*, 214 Or App 509, 166 P3d 599 (2007), and *State v. Vargas*, 271 Or App 675, 352 P3d 743 (2015)—it purports to apply a legal principle that was not proffered by the parties, and, as I understand

---

[17] Jessica's Law, Or Laws 2006, ch 1, §§ 1-7 (Spec Sess), requires the imposition of mandatory minimum sentences for certain sex crime and kidnapping convictions. Jessica's Law mandatory minimums cannot be imposed on a person who was under 18 years of age at the time the person committed the relevant offense. Or Laws 2006, ch 1, § 3(2). Measure 11 minimum sentences cannot be imposed on an individual who was under 15 years of age at the time of committing a relevant offense. *See* ORS 419C.349 (a juvenile under 15 years of age cannot be waived into adult court).

it, it attempts to refashion defendant's assignment of error as not pertaining to "the length of the sentence imposed, or to some other sentence length asserted to be applicable." *See Casiano*, 214 Or App at 516 (concluding the challenged ruling was reviewable where the challenged ruling *did not* "pertain to the length of the sentence imposed, or to some other sentence length asserted to be applicable").

Further, in my view, the majority misreads controlling Supreme Court authority—*State v. Althouse*, 359 Or 668, 375 P3d 475 (2016) and *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den*, 522 US 994 (1997)—that is binding on us.

I respectfully dissent, and would affirm the trial court, because I would conclude that defendant's challenge to his sentence is not reviewable. Therefore, I express no opinion on the merits question of whether, as framed by the majority, in a situation such as that presented by this case, ORS 161.740 merely functions as an "overlay to presumptive sentence[es] prescribed by" the sentencing guidelines or "displaces" the sentencing guidelines. 345 Or App at 692 (describing two "plausible interpretations" of ORS 161.740). Instead, in addressing the reviewability issue here, it suffices to determine, as I would, that ORS 161.740 does not, in all cases, *prohibit* a trial court from imposing the "presumptive" sentence under the sentencing guidelines if that is where the exercise of the trial court's discretion under ORS 161.740 leads it. That is, the legislature's enactment of ORS 161.740 did not make it a "legal impossibility" for a court to impose a "presumptive sentence" under the sentencing guidelines for conduct that a defendant committed when the defendant was under 18 years of age.

The chief difficulty with the majority's view regarding reviewability is that neither *Casiano* nor *Vargas* support the conclusion reached by the majority: that defendant's challenge to his presumptive sentence, which was prescribed by the rules of the OCJC for his crimes, is reviewable on direct appeal by defendant.

Instead, as explained below, the proper analysis of the reviewability question is set forth in the Supreme Court's

opinions in *Althouse* and *Huddleston*, and is illustrated by our application those cases in *State v. Miller*, 291 Or App 599, 422 P3d 327, *rev den*, 363 Or 727 (2018), and *State v. Fernandez*, 334 Or App 81, 555 P3d 350, *rev allowed*, 373 Or 121 (2024).

In *Althouse*, the Supreme Court articulated three prerequisites for a challenge to a sentence to be unreviewable on direct appeal under the statute barring review of sentences that fall "within the presumptive sentence prescribed by the rules of the [OCJC]." 359 Or at 672. "First, the challenged sentence must be a presumptive sentence." *Id.* "Second, the challenged sentence must be within a presumptive sentence." *Id.* (internal quotation marks and brackets omitted). "Finally, the challenged sentence must be prescribed by the rules of the [OCJC]." *Id.* (internal quotation marks omitted). As explained below, those three prerequisites are met in this case.

Additionally, *Althouse* affirmed the continuing viability of the reviewability analysis in *Huddleston*, a case which, as explained below, mirrors the issue in this case, albeit involving a different sentencing statute. In *Huddleston*, the Supreme Court concluded that a party's contention that the defendant should have been sentenced pursuant to the provisions of ORS 137.700 (Measure 11) instead of pursuant to the sentencing guidelines was not reviewable on direct appeal. *See* 324 Or at 600, 608. Similarly, in this case, defendant's contention is that he should have been sentenced pursuant to the provisions of ORS 161.740 instead of pursuant to the sentencing guidelines, and, in my view, that contention is not reviewable on direct appeal.

The majority, however, charts a different course, concluding that defendant's sentence *is* reviewable because defendant's "appeal in this case is similar to those in *Vargas* and *Casiano.*" 345 Or App at 688. In the majority's view, defendant's challenge to his sentence is reviewable because defendant is challenging "aspects of [his] presumptive sentence other than the length of the sentence as imposed," as that phrase is used in *Vargas* and *Casiano*. *Id.*

It may come as a surprise to the parties for the majority to conclude that defendant is not challenging "the length of his sentence as imposed": as noted, defendant does not so argue, and neither party discusses, much less cites, either *Casiano* or *Vargas* in their briefing. I suspect the reason that defendant does not rely on *Casiano* or *Vargas* is because *Casiano* actually supports the view that the defendant's claim of error is unreviewable and *Vargas* is wholly inapposite.

In *Casiano*, unlike in this case, the defendant was *not* challenging a presumptive sentence prescribed by the rules of the OCJC. In that case, the trial court imposed "a presumptive sentence of 45 months' imprisonment and 36 months' post-prison supervision" on defendant. 214 Or App at 512. The trial court "then determined that * * * [defendant's] conviction and sentence are subject to ORS 137.635," a statute which "affects an offender's eligibility for subsequent modifications of the sentence that are implemented by the custodial or supervisory authority (in this case, [the Department of Corrections]), such as temporary leave from custody or earned time reductions." *Id.* at 512, 516. On appeal, the defendant's argument in *Casiano* was "that the trial court committed plain error in concluding that his conviction and sentence are subject to ORS 137.635." *Id.* at 511. The state argued that the defendant's claim of error was not reviewable. *Id.* at 515.

We concluded that the defendant's claim of error was reviewable because the "challenged ruling of the trial court"—*i.e.*, the trial court's ruling that the defendant's conviction and sentence were subject to ORS 137.645—"did not pertain to the length of the sentence imposed, or to some other sentence length asserted to be applicable." *Id.* at 516. Rather, the ruling that the defendant challenged in *Casiano* "pertained to the applicability of ORS 137.635, which does not itself establish the length of any sentence but * * * affects an offender's eligibility for subsequent modifications of the sentence that are implemented by the custodial or supervisory authority." *Id.* And we concluded that "*that aspect* of defendant's sentence"—*i.e.*, the aspect which "did not pertain to the length of the sentence imposed, or to some other sentence length asserted to be applicable," *id.* (emphasis

added)—was reviewable under the statutory predecessor to ORS 138.105(8)(a)(A).

Here, in contrast to *Casiano*, defendant's argument *does* "pertain to the length of the sentence imposed, or to some other sentence length asserted to be applicable." *Casiano*, 214 Or App at 516. Defendant argues that the trial court "should have sentenced defendant under ORS 161.740," which, in defendant's view, contains "mitigating criteria that must be considered in imposing a sentence," instead of sentencing defendant pursuant to the sentence provided for in the felony sentencing guidelines. Consequently, *Casiano* suggests defendant's claim of error *is not* reviewable because defendant's claim of error does "pertain to the length of the sentence imposed, or to some other sentence length asserted to be applicable." *Id.*

Further, as noted, this court's opinion in *Vargas*, in my view, is inapposite. In *Vargas*, the "defendant contend[ed] that the trial court's guilty verdicts on two counts of felony assault in the fourth degree should have been merged into a single conviction." 271 Or App at 677. Specifically, defendant argued that ORS 161.067—Oregon's "anti-merger" statute—did not "authorize two separate convictions for felony fourth-degree assault." *Id.* at 678. The state, in response, acknowledged that there was not a "sufficient basis under ORS 161.067(3) for entry of separate convictions," but argued that "defendant's claim of error is not reviewable, because the trial court imposed sentences on both convictions that are within the presumptive sentence range under the sentencing guidelines." *Id.* at 677-78. Relying on our analysis in *Casiano*, we disagreed with the state, explaining that "[b]ecause defendant challenges the court's failure to merge the findings of guilt, not the length of the concurrent, presumptive sentences, ORS 138.222(2)(a) does not preclude review." *Id.* at 678.

The difficulty with the majority's reliance on *Vargas* is that in *Vargas* the defendant's argument was about merger—defendant contended that the trial court's failure to merge the verdicts under ORS 161.067 resulted in one too many convictions. The defendant was not challenging the "length" of his sentence as such.

Defendant's challenge in this case, however, directly concerns the length of the sentence he received: a fair reading of his argument is that he believes he should have received a different, shorter sentence, based on the trial court applying the provisions of ORS 161.740 instead of the sentencing guidelines. In short, this case is like *Huddleston*, not *Vargas*.

Thus, rather than *Casiano* and *Vargas*, the reviewability question in this case is controlled by *Althouse, Huddleston, Miller*, and *Fernandez*. As explained below, application of those cases dictates that our review on direct appeal of defendant's challenge to his sentence in this case is precluded by application of ORS 138.105(8).

I would resolve this case in the following manner, and I respectfully dissent.

## I.  BACKGROUND

When defendant was a juvenile he engaged in the criminal conduct that led to his convictions—namely, sexually abusing and sodomizing his stepsister who was approximately five years younger than him. The victim disclosed defendant's conduct when she was 14 years old, and defendant was over 18 years old. Defendant was indicted for his conduct—the sex crimes that he committed against his younger stepsister—and he pleaded guilty to certain offenses. His plea agreement left sentencing open.[1]

Regarding his sentence, defendant's plea agreement, defendant's sentencing memorandum, and the state's sentencing memorandum were in agreement that

- for Count 3, first-degree sodomy, defendant's sentencing grid block was a 10-I, for which the felony sentencing guidelines provide a presumptive sentencing range of 58-60 months;

- for Count 7, first-degree sexual abuse, defendant's sentencing grid block was an 8-D, for which the felony sentencing guidelines provide a presumptive sentencing range of 27-28 months;

---

[1] In exchange for pleading guilty, other counts for which defendant was indicted—Counts 1, 2, 4 to 6, and 10 to 12—were dismissed.

- for Count 8, first-degree sexual abuse, defendant's sentencing grid block was an 8-B, for which the felony sentencing guidelines provide a presumptive sentencing range of 35-40 months; and

- for Count 9, first-degree sexual abuse, defendant's sentencing grid block was an 8-A, for which the felony sentencing guidelines provide a presumptive sentencing range of 41-45 months.

At sentencing, the state argued that the trial court should run the sentences on each count consecutively and that defendant should be sentenced to 173 months in the Department of Corrections. Defendant, for his part, argued that a prison sentence would be "unjust and unconstitutional under Article I, section 16 of the Oregon Constitution and the Eighth Amendment to the United State Constitution" and that the court should "should impose a probationary sentence and make [defendant] eligible for a hearing under ORS 163A.030." Defendant also pointed the trial court to ORS 161.740, which, among other provisions, sets forth certain circumstances that a trial court must take into account when "determining the appropriate sentence for a person who was under 18 years of age at the time of committing the offense," if the court is provided with information concerning those circumstances.

After hearing from the parties, the victim's father, and the victim, the trial court sentenced defendant to the "presumptive" sentences under the sentencing guidelines—60 months' imprisonment on Count 3, 28 months' imprisonment on Count 7, 40 months' imprisonment on Count 8, and 45 months' imprisonment on Count 9.[2]

As the trial court put it, it "follow[ed] the grid" when sentencing defendant. Though, in consideration of the circumstances of the case, it elected to run the sentences concurrently, rather than consecutively.

---

[2] During sentencing, the trial court heard, among other information, that defendant sexually abused his younger stepsister hundreds of times—almost every day over a period of years; that that abuse frequently involved going into her room at night and holding her down while he sexually abused her; and that he also physically abused and threatened her, at one point telling her that he would kill her while he held a knife in his hand.

## II.   ARGUMENTS ON APPEAL

On appeal defendant acknowledges that the trial court imposed "presumptive sentences" under the sentencing guidelines, but he contends that that was error because it should have sentenced defendant under ORS 161.740, which, as noted, sets forth certain circumstances that a trial court must consider "in determining the appropriate sentence for a person who was under 18 years of age at the time of committing the offense," if the trial court is provided with information concerning those circumstances.

Further, defendant contends that his challenge to his sentence is reviewable by us, notwithstanding ORS 138.105(8)(a)(A), because ORS 161.740 and the sentencing guidelines "conflict." That is, in defendant's view, unlike "the guidelines, which require particular sentences and allow for departure from those sentences only for substantial and compelling reasons, ORS 161.740 does not require a given sentence, but rather requires the court to consider certain circumstances to determine an 'appropriate' sentence." Defendant's understanding is that "a sentencing court cannot both follow the legislative mandate to consider the enumerated circumstances [in ORS 161.740] as mitigation and afford substantial weight to a mental health evaluation in determining the 'appropriate' sentence and follow the guidelines that have already determined the presumptive incarceration sentence that applies to adult offenders in the absence of 'substantial and compelling reasons.'"

The state, for its part, contends that defendant's sentence is unreviewable under ORS 138.105(8)(a)(A). As the state understands that statute, when a "defendant pleads guilty to felony offenses that are subject to the sentencing guidelines, and the sentencing court imposes on each such conviction the presumptive sentence that is prescribed by the guidelines, and the defendant then contends on appeal that the sentences imposed are error because they are excessive, this court has no authority to review that challenge, even if the basis for that challenge is an allegation that the court failed to comply with requirements of law in imposing or failing to impose a sentence."

The state also takes a different view than defendant regarding the meaning of ORS 161.740. As the state sees it, under that statute, "when, as in this case, the conviction being sentenced is subject to the sentencing guidelines, nothing in that statute either displaces the guidelines as the governing source of sentencing authority or otherwise exempts that conviction from any of the rules that govern the calculation and imposition of a presumptive sentence." Put another way, the state contends that ORS 161.740 "does not require or authorize a court to impose a sentence that is different from what the guidelines prescribe or allow for [a] conviction."

### III.   REVIEWABILITY AND ORS 161.740

ORS 138.105 sets forth the appellate courts' "authority to review the judgment or order being appealed." Under that statute, in an "appeal by a defendant," we have no authority to review a sentence that is "within the presumptive sentence prescribed by the rules of the [OCJC]."

ORS 138.105 provides, in relevant part:

"(1)   On appeal by a defendant, the appellate court has authority to review the judgment or order being appealed, subject to the provisions of this section.

"*****

"(7)   Except as otherwise provided in subsections (8) and (9) of this section, the appellate court has authority to review any sentence to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence.

"(8)   Except as otherwise provided in subsection (9) of this section, for a sentence imposed on conviction of a felony committed on or after November 1, 1989:

"(a)   *The appellate court has no authority to review*:

"(A)   *A sentence that is within the presumptive sentence prescribed by the rules of the [OCJC].*"

(Emphases added.) Whether defendant's claim is reviewable under ORS 138.105 is a question of law. *Fernandez*, 334 Or App at 83.

Before turning to the application of ORS 138.105 in this case, and the consideration of whether defendant's argument concerning ORS 161.740 operates to make defendant's otherwise unreviewable presumptive guidelines sentence reviewable, I discuss four cases that, in my view, provide useful bookends in explaining the application of ORS 138.105(8) and why defendant's challenge to his sentence is not reviewable.

The first two, which defendant relies on in contending that his sentence is reviewable, are *Althouse* and *Miller*. In those cases, Oregon appellate courts concluded that review was not prohibited by a predecessor statute of ORS 138.105(8)(a)(A), *former* ORS 138.222(2)(a), *repealed by* Or Laws 2017, ch 529, § 26.[3] But in both of those cases, as explained below, the sentence that the defendant *actually received* was pursuant to a statute, not pursuant to the sentencing guidelines, so the sentences were reviewable. Those cases are unlike this case. In this case, as explained above, defendant did receive a sentence dictated by the sentencing guidelines.

In the second two cases, *Huddleston* and *Fernandez*—which the state points to in support of its position that defendant's sentence is not reviewable—Oregon appellate courts concluded that review was prohibited by ORS 138.105(8) or its predecessor *former* ORS 138.222 (2)(a). As explained below, in *Huddleston*, the court concluded that, at least generally, when a sentencing court *does not* apply a statute that would otherwise determine the length of a defendant's sentence, and instead applies the felony sentencing guidelines, the sentence is not reviewable on direct appeal. In *Fernandez*, the court concluded that a defendant's sentence is not reviewable on direct appeal merely because defendant contends that the length of the sentence was unconstitutional.

I discuss each set of cases in turn, before turning to proper application of ORS 138.105(8)(a)(A) in this case. Although *Huddleston*, *Althouse*, and *Miller* concern application of *former* ORS 138.222(2)(a), they are informative

---

[3] As does the majority, in this dissent, when citing *former* ORS 138.222, for readability and because none of the amendments to the language of ORS 138.222 are material to the analysis, I do not include a year.

in interpreting ORS 138.105(8)(a)(A), because "the provisions codified at ORS 138.105(8)(a), (b), and (c) *** were intended to restate the limits on reviewability of felony guideline sentences that had been in *former* ORS 138.222 (2)(a) through (c)." *Fernandez*, 334 Or App at 84-85.

A.   Althouse *and* Miller

I begin with *Althouse*, which, among other points, articulated and applied the three prerequisites for a sentence to be unreviewable under *former* ORS 138.222(2)(a).

In *Althouse*, the defendant had been sentenced to life imprisonment without the possibility of parole pursuant to ORS 137.719, which provides that "the presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence." 359 Or at 670 & n 2. The defendant argued that that sentence, as applied to him, violated Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. *Id.* at 670. The state, for its part, argued that *former* ORS 138.222(2)(a) precluded the defendant from challenging that sentence on direct appeal. *Id.* at 670. At that time, *former* ORS 138.222(2)(a) provided that the appellate court may not review "[a]ny sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission." *Id.* at 672.

As the state argued it in *Althouse*, the defendant received a "presumptive sentence prescribed by the rules of the [OCJC]" because although "ORS 137.719(1) prescribed the presumptive sentence that the trial court imposed," the OCJC's rules "define the term 'presumptive sentence' as" including "'a sentence designated as a presumptive sentence by statute.'" *Althouse*, 359 Or at 671 (quoting OAR 213-003-0001(16)).

The court concluded that the defendant's sentence was reviewable. It explained that, for review of a sentence to be barred by *former* ORS 138.222(2)(a), it must meet three prerequisites:

"First, the challenged sentence must be a presumptive sentence. Second, the challenged sentence must be within a presumptive sentence. Finally, the challenged sentence must be prescribed by the rules of the Oregon Criminal Justice Commission."

*Id.* at 672 (internal quotation marks and brackets omitted).

The court noted that there was "no dispute that the first prerequisite," *i.e.*, the sentence was a presumptive sentence, "is satisfied." *Id.* at 672. With regard to the second prerequisite, however, it explained that "life without parole is not a sentence 'within' another sentence; that is, life without parole is not a sentence that falls within a range of possible sentences marked by minimum and maximum levels of severity." *Id.* at 673. Put another way, although a "sentence imposed pursuant to ORS 137.719(1) is a presumptive sentence, it is not 'within' a presumptive sentence or range of presumptive sentences, as that term is ordinarily understood." *Id.* at 673.

Regarding the third prerequisite—whether the "challenged sentence was prescribed by the rules of the [OCJC]"—considering the text of *former* ORS 138.222(2)(a) in context, the court explained that the phrase "[a]ny sentence that is within the presumptive sentence prescribed by the rules of the [OCJC]" in *former* ORS 138.222(2)(a) can "have only one referent: The phrase refers to a sentence that comes within the range of presumptive sentences prescribed by a sentencing guidelines grid block." *Althouse*, 359 Or at 676.

In determining that that prerequisite was not satisfied in *Althouse*, the court explained that "[o]rdinarily, the Commission's rules establish 'grid blocks' that prescribe a range of presumptive sentences for a crime, depending on the severity of the crime and the offender's criminal history." *Id.* at 673. And it noted that "the presumptive sentence that the trial court imposed in this case departs from that usual model in two respects." *Id.* First, "a statute—ORS 137.719(1)—prescribed the presumptive sentence that the court imposed," and it did so "independently of anything that the Commission did or did not do." *Id.* And, second, "the same thing cannot be said for the Commission's rule": if the legislature "repealed

ORS 137.719, no presumptive life sentence for a defendant's third felony sex offense would be prescribed by rule or otherwise." *Id.*

Thus, ultimately, the court concluded that "because a sentence imposed pursuant to ORS 137.719(1) does not come within the class of sentences to which [*former*] ORS 138.222(2)(a) applies," defendant's challenge to his sentence was reviewable. *Id.* at 678.

Following *Althouse*, in *Miller*, we concluded that *former* ORS 138.222(2)(a) did not prevent us from reviewing the defendant's contention that his sentences for unlawful manufacture of methamphetamine and unlawful delivery of methamphetamine were unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution. As to those charges, the trial court "imposed an 81-month prison term, based on application of ORS 475.925 and ORS 475.930." 291 Or App at 604.

As applicable to the defendant, ORS 475.925 required the trial court to impose a term of incarceration of 58 to 130 months. *Id.* at 610. And ORS 475.930 provided that, when a person is sentenced pursuant to ORS 475.925, in determining the sentence of incarceration, the court "shall us the criminal history scale of the sentencing guidelines," but that it must use a "crime category of 10," and that the court "may not impose a downward dispositional departure or downward durational departure under the rules of the commission." *Id.* at 609.

In concluding that the defendant's sentence was reviewable, we explained that, under *Althouse*, "the presumptive sentence 'prescribed by' the rules of the Commission" as that phrase was used in *former* ORS 138.222(2)(a) "can refer only to the presumptive sentence contained in the appropriate guidelines grid block *as dictated by application of the crime seriousness and criminal history scales established by the Commission in the guidelines.*" *Miller*, 291 Or App at 611 (emphasis in original). But regarding the sentence at issue in *Miller*, "the legislature itself mandated the crime seriousness scale to be used in determining the presumptive sentences, notwithstanding what the Commission had, by

rule, promulgated in the guidelines; moreover, the statutory scheme expressly precluded the court from imposing a downward departure that would otherwise be available under the guidelines rules." *Id.*

Thus, "sentences imposed under ORS 475.925 and ORS 475.930—although determined by *reference* to the grid block—are not within the presumptive sentence *prescribed by* the rules of the Commission, as the legislature, in enacting *former* ORS 138.222(2)(a), intended." *Id.* at 611 (emphases in original). We explained that, as in *Althouse*, the sentences in *Miller* were not "provided in a grid block for an offender classified in that grid block" but instead were "prescribed by the legislature, using the grid block as a reference." *Id.* Therefore, they were reviewable.

B.   Huddleston *and* Fernandez

In contrast to *Althouse* and *Miller*, in *Huddleston* and *Fernandez*, Oregon appellate courts concluded that review was unavailable on direct appeal. In those cases, as here, the sentences that the defendants received were presumptive guideline sentences.

In *Huddleston*, the Supreme Court concluded that the state's challenge to a defendant's sentence was not reviewable on direct appeal where the trial court concluded that it would be unconstitutional to impose the mandatory minimum sentence provided by ORS 137.700 (Measure 11) and instead imposed the applicable felony sentencing guideline sentence for defendant's crime. *Huddleston*, 324 Or at 599-600, 608. The court explained that the legislative intent underlying the reviewability bar in *former* ORS 138.222:

> "The purpose of ORS 138.222, as revealed in the legislative history, was to curtail appellate review and reduce the number of appeals. With respect to those cases in which the trial court imposed a presumptive sentence on a conviction that was placed in the proper grid block, the stated intention was that appellate review would not be available. There was no suggestion that the reason for imposing the presumptive sentence, or the reason for *not* imposing a different (higher or lower) sentence, would matter."

*Id.* (emphasis in original).

Further, the court rejected an argument from defendant that "may be read to suggest that Measure 11 impliedly repealed the sentencing guidelines for all covered crimes, so that it is a legal impossibility to impose a 'presumptive sentence' with regard to a Measure 11 crime." *Id.* at 604. The court rejected that argument, because "the sentencing guidelines and Measure 11 can be harmonized, giving effect to both." 334 Or App at 605. The court explained, among other points, that:

> "Although the statutorily mandated term of imprisonment [under ORS 137.700] likely will exceed 'the presumptive sentence' prescribed by the felony sentencing guidelines in most cases, (1) that will not necessarily be true in all cases and (2) the sentencing court may use the criteria for departure sentences in the guidelines to impose a sentence greater than the statutorily mandated minimum, even when the offense is [subject to ORS 137.700]."

334 Or App at 604.

Ultimately, the court concluded that the defendant's guidelines sentence would be unreviewable on direct appeal, because "the trial court placed defendant's conviction into grid block 8-H of the felony sentencing guidelines and imposed a 20-month sentence"; it is "undisputed that [the defendant's] conviction properly falls into grid block 8-H"; that "'the presumptive sentence' provided for a conviction in grid block 8-H is 19 to 20 months"; that "the 20-month sentence thereby is 'within' that presumptive sentence"; and that the defendant's conviction "is subject to the felony sentencing guidelines as well as to ORS 137.700." *Id.* at 605.

More recently, in *Fernandez*, we concluded that the defendant's challenge to his sentence was unreviewable under ORS 138.105, the reviewability statute at issue in this case. The defendant in *Fernandez* argued that the trial court erred when it used a "crime seriousness category 8 to sentence defendant" on a count of first-degree online sexual corruption of a child. 334 Or App at 82. The defendant did not challenge that the applicable rules put his crime of conviction in category 8 but argued that the "the resulting presumptive sentence was disproportionate in violation of Article I, section 16, of the Oregon Constitution." *Id.*

We concluded that that challenge was unreviewable under ORS 138.105(8)(c)(A), which allows for appellate review of a claim that the sentencing court erred "ranking the crime seriousness classification of the current crime." We explained that it was "undisputed that the sentencing court correctly applied the rules of the [OCJC] when it ranked defendant's crime of conviction in crime seriousness category 8 and defendant's criminal history in category H, and it is undisputed that the court imposed a sentence within the presumptive sentencing range for grid block 8-H," and that therefore the sentencing court "cannot be said to have erred '[i]n ranking the crime seriousness classification of the current crime,' so as to come within the exception in ORS 138.105(8)(c)(A)." *Fernandez*, 334 Or App at 87. Further, with a reference to legislative history, we explained that, under *Huddleston*, in assessing reviewability, it "did not matter how the defendant came to receive a presumptive sentence." *Fernandez*, at 87.

C.   *Application*

With that background, I turn to this case. As required by *former* ORS 138.222(2)(a), I understand ORS 138.105(8)(a)(A) to prevent this court from reviewing a sentence when three prerequisites are met: (1) "the challenged sentence must be a presumptive sentence"; (2) "the challenged sentence must be within a presumptive sentence"; and (3) the challenged sentence must be "prescribed by the rules of the [OCJC]." *Althouse*, 359 Or at 673 (internal quotation marks and brackets omitted). That understanding of ORS 138.105(8)(a)(A) follows from the fact that, as noted above, the purpose of the "the provisions codified at ORS 138.105(8)(a), (b), and (c) *** were intended to restate the limits on reviewability of felony guideline sentences that had been in *former* ORS 138.222(2)(a) through (c)." *Fernandez*, 334 Or App at 84-85.

It also follows that, regarding the third prerequisite in ORS 138.105(8)(a)(A)—as was the case with the nearly identical language in *former* ORS 138.222(2)(a)—a sentence is "prescribed by the rules of the" OCJC when it is a sentence that "comes within the range of presumptive sentences prescribed by a sentencing guidelines grid block." *Althouse*, 359 Or at 676. Further, a presumptive sentence "comes within

the range of presumptive sentences prescribed by a sentencing guidelines grid block" when the sentence is "the presumptive sentence contained in the appropriate guidelines grid block as *dictated by application of the crime seriousness and criminal history scales established by the Commission in the guidelines.*" *Miller*, 291 Or App at 611 (emphasis in original).

In this case, the three prerequisites triggering the reviewability bar as set forth in *Althouse* are met: First, defendant's sentence is a "presumptive sentence." *See* ORS 137.669 ("[T]he incarcerative guidelines and any other guidelines so designated by the Oregon Criminal Justice Commission shall be mandatory and constitute presumptive sentences."). Second, it is "within a presumptive sentence." *Cf. Althouse*, 359 Or at 673 (noting "life without parole is not a sentence 'within' another sentence; that is, life without parole is not a sentence that falls within a range of possible sentences marked by minimum and maximum levels of severity"). And, third, defendant was sentenced in accordance with the rules of the OCJC and his sentence was placed in the guidelines grid block dictated by application of the crime seriousness and criminal history scales established by the guidelines. Thus, as I understand the prerequisites as articulated in *Althouse*, defendant received a "presumptive sentence prescribed by the rules of the" OCJC. Consequently, defendant's sentence is unreviewable, at least on direct appeal.

In short, this case is like *Huddleston*, where the court concluded that the appellant's challenge to the trial court's decision not to apply ORS 137.700 (Measure 11), and to instead apply the presumptive sentence prescribed by the rules of the OCJC, was not reviewable on direct appeal under *former* ORS 138.222. Just as in *Huddleston*, in this case, defendant received the presumptive sentence prescribed by the rules of the OCJC. And just as in *Huddleston*, in this case, appellant's challenge is to the trial court's purported error in failing to apply a statute that it purportedly was required to and that would have provided for a sentence other than the presumptive sentence prescribed by the rules of the OCJC. So, just as in *Huddleston*, in this case, defendant's

presumptive sentence prescribed by the rules of the OCJC is not reviewable on direct appeal.

As *Huddleston* demonstrates, it does "not matter how the defendant came to receive a presumptive sentence," *Fernandez*, 334 Or App at 86, what matters is that he received a presumptive sentence prescribed by the rules of the OCJC.

In arguing that review is available, defendant relies on *Althouse* and *Miller*. As described above, however, in both those cases the sentence that the defendant *actually received* and was challenging on appeal was dictated by a statute, not the sentencing guidelines: In *Althouse*, the Supreme Court held that when the trial court imposed the "presumptive life sentence provided in ORS 137.719(1)" review was not barred by *former* ORS 138.222. *Althouse*, 359 Or at 670-71. In *Miller*, we held that when the trial court imposed "an 81-month prison term, based on application of ORS 475.925 and ORS 475.930"—which provide the "statutorily required mandatory minimum sentences" for the defendant's offenses—review was not barred by *former* ORS 138.222. *Miller*, 291 Or App at 601. Neither *Althouse* nor *Miller* support the majority's position that defendant's claims are reviewable in this case, because in this case, defendant's contention is that the trial court erred by failing to impose a statutory sentence—*i.e.*, he contends that "the trial court erred by failing to sentence defendant under ORS 161.740"—and, as defendant recognizes, "the trial court [here] imposed presumptive sentences under the sentencing guidelines."

Guided by the Supreme Court's consideration of reviewability in *Huddleston*, however, analysis of reviewability in this case must consider whether ORS 161.740 operated to "impliedly repeal" the sentencing guidelines for offenders who committed their offenses when they were under 18 years of age or otherwise made it so that it is "a legal impossibility to impose a 'presumptive sentence'" under the guidelines with regard to a sentence for such conduct. *See Huddleston*, 345 Or at 604 (considering whether "Measure 11 impliedly repealed the sentencing guidelines for all covered crimes, so that it is a legal impossibility to impose a 'presumptive sentence' with respect to a Measure 11 crime"). In doing so, it is

important to keep in mind that repeal by implication is "not favored" and must be established by "plain, unavoidable, and irreconcilable repugnancy." *Id.* at 604-05 (internal quotation marks omitted). Furthermore, ORS 137.669 expressly provides that the sentencing guidelines, subject to certain exceptions not applicable here, "shall control the sentences for all crimes committed after the effective date of such guidelines."

I would conclude that there is no "irreconcilable repugnancy," *see* 345 Or at 605, here: Enactment of ORS 161.740 did not make it a "legal impossibility" for a court to impose a "presumptive sentence" under the sentencing guidelines for felony conduct that a defendant committed when the defendant was under 18 years of age. That is because there is nothing in the text nor context of ORS 161.740(2), nor any legislative history of which I am aware, that leads to a conclusion that the legislature intended to *prohibit* a court from exercising its discretion to impose the presumptive guidelines sentence for crimes committed when a defendant was under 18 years of age.

To illustrate that point, assume defendant is correct that ORS 161.740 "does not require a given sentence," but rather only "requires the court to consider certain circumstances to determine an 'appropriate' sentence," *i.e.*, assume that defendant is correct that ORS 161.740 gives the court more or less unfettered discretion as long as it exercises that discretion giving consideration to the circumstances in ORS 161.740. If that is correct, nothing that I can see would prevent a court from determining, after considering those circumstances, that the "appropriate sentence" under ORS 161.740 is the presumptive sentence prescribed by the guidelines.[4]

But it may also be, as I understand the state to contend, that when a defendant has committed a felony to which the sentencing guidelines apply, then ORS 161.740 merely provides considerations that the court must take into account in determining what sentence within the presumptive

---

[4] I note that, at oral argument, defendant acknowledged that ORS 161.740 and the sentencing guidelines can "coexist." That is, defendant took the view that, in some cases, the "[t]he appropriate sentence may be a guideline sentence, and it may not be, and it kind of depends on the case."

I do not understand the majority to disagree with that understanding of ORS 161.740.

sentence under the guidelines to impose on a defendant who was under 18 at the time of his conduct. If the state is correct as to how ORS 161.740 works, both ORS 161.740 and the sentencing guidelines may be given effect, and no "implied repeal" has occurred.

Finally, I observe that nothing in ORS 161.740 prohibits a court from imposing a guidelines sentence when the court has not been provided with the information set forth in ORS 161.740(2) and (3), which the court must consider in determining an appropriate sentence under ORS 161.740 only if the information has been provided. *See* ORS 161.740(2) ("[I]f the court is provided information concerning the following circumstances, or any other relevant circumstances, the court shall consider those circumstances * * *[.]"); ORS 161.740(3)(a) ("If the court is provided with a report of a mental health evaluation of the person, the court shall give the evaluation substantial weight in imposing the sentence * * *[.]").

Thus, in the end, under a proper interpretation of ORS 138.105(8)(a)(A), defendant's challenge to his presumptive sentence is unreviewable, and this court need not determine precisely how ORS 161.740 *should have* applied in this case, because it is evident from the foregoing discussion related to ORS 161.740 that nothing in that statute prohibits a trial court, in appropriate circumstances, from imposing the "presumptive sentence contained in the appropriate guidelines grid block *as dictated by application of the crime seriousness and criminal history scales established by the Commission in the guidelines*." *Miller*, 291 Or App at 611 (emphasis in original). That is, enactment of ORS 161.740(2) did not make it a "legal impossibility" for a court to impose a "presumptive sentence" under the sentencing guidelines for felony conduct that a defendant committed when the defendant was under 18 years of age.

## IV.   CONCLUSION

In sum, I disagree with the majority that this case is "similar to" *Casiano* and *Vargas*. Instead, it is similar to *Huddleston*, where the Supreme Court concluded that review of a defendant's sentence on direct appeal is *not* available

when a defendant receives a guidelines sentence, and the appellant argues that, under a particular statute, defendant should have received a different sentence. Moreover, the three prerequisites set forth in *Althouse* for review of a sentence on direct appeal to fall within ORS 138.105(8)(a)(A)'s bar on reviewability were satisfied in this case. Finally, as explained above, ORS 161.740 does not make it a "legal impossibility" to impose a guidelines sentence in this case. Thus, I would conclude that defendant's challenge to his sentence—a sentence that is "within the presumptive sentence prescribed by the rules of the [OCJC]," ORS 138.105(8)(a)(A), for the offenses he committed—is not reviewable on direct appeal and I would affirm the trial court's imposition of the presumptive guidelines sentence.

Consequently, I respectfully dissent.